# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## GARRETT JOHNSON V. COMMONWEALTH OF VIRGINIA.

October 8, 1945.

Record No. 3015.

Present, All the Justices.

The opinion states the case.

*William Kinckle Allen*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, and *M. Ray Doubles, Assistant Attorney General*, for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

Garrett Johnson was indicted for a violation of the provisions of section 4402 of the Code, the charge being that he "in and upon one R. W. McAllister did make an assault and him, the said R. W. McAllister, feloniously and maliciously did wound, and did cause him, the said R. W. McAllister, bodily injury with intent him, the said R. W. McAllister, then and there to. maim, disfigure, disable. and kill, against the peace and dignity of the Commonwealth of Virginia."

Upon the trial, the jury returned this verdict: "We the jury find the defendant, Garrett Johnson, guilty of malicious wounding as charged in the indictment and fix his punishment at three (3) years in the penitentiary."

The motion to set aside the verdict was overruled and defendant was sentenced in accordance with the verdict.

■ The evidence introduced by the Commonwealth and the defendant is in sharp conflict. Since the conflict has been by the verdict of the jury resolved in favor of the Commonwealth, it is unnecessary for us to review the evidence in its entirety.

This is a summary of the evidence of the Commonwealth as set forth in the brief filed by the Attorney General:

"The complaining witness in this case, R. W. McAllister,

an employee of the Chesapeake and Ohio Railway for eighteen years, was a supervisor of one of their roundhouses. The defendant, aged twenty (20) years, was a helper at the roundhouse whose duties were to blow out the ashes from the ash pans of engines serviced at the roundhouse. The shift on which these two worked on the night of the alleged offense was the so-called second shift, *i.e.*, from 3:00 p. m. to 11:00 p. m.

"At 9:30 p. m., McAllister told the defendant and the defendant's brother, who also worked on servicing the engines, to take engine number 2732 to the ash pit for service. Ordinarily it takes about forty minutes to service an engine, and when an hour and fifteen minutes had passed without the engine being returned McAllister at 10:45 p. m., went up to the ash pit to see what was the matter. In the presence of a witness named Jamerson, McAllister asked the defendant: 'What's the hold-up on 2732?' whereupon the defendant, with a gun in his hand, replied: 'I'm Goddam tired of having you curse at me. I'm not going to take it any more.' McAllister rejoined: 'What's the matter with you? Are you crazy?' The defendant then said, 'Take off your glasses.' By this time another witness named Moore had arrived on the scene and Jamerson was leaving. McAllister refused at first to take off his glasses, as he says 'I knew if I took 'em off I was blind.' McAllister then started toward the roundhouse, whereupon the defendant, among other abusing epithets, called McAllister 'a Goddam white son of a bitch.'

"The defendant having put the pistol in his pocket, McAllister turned, came back to the scene, and just as he took his glasses off and before he could defend himself the defendant hit him with his fist along the side of the head, which blow reeled McAllister backward and turned him to the right. Before he could recover, he received another blow in the back: 'I made a turn, about a half turn, and about the time I got half turned something hit me like a sledge hammer, right in the back, and broke two of my ribs right at the vertebra.'"

It is assigned as error that: "There has been no wounding of the prosecutor as contemplated by the maiming statute, section 4402 of the Code."

Section 4402 reads:

"If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with intent to maim, disfigure, disable, or kill, he shall, except it is otherwise provided, be punished by confinement in the penitentiary not less than one nor more than ten years. If such act be done unlawfully, but not maliciously, with the intent aforesaid, the offender shall, in the discretion of the jury, be confined in the penitentiary not less than one nor more than five years, or be confined in jail not exceeding twelve months, and fined not exceeding five hundred dollars."

There is conclusive proof that as a result of the assault of defendant, McAllister received two broken ribs. The question for our determination is, did the injury received by McAllister constitute a wound as contemplated under the provision of section 4402?

The reliance of the Commonwealth to sustain the verdict is upon what is known as the medical definition of a wound. In Taylor's Medical Jurisprudence a wound is defined as "A solution of the natural continuity of any of the tissues of the body."

Though several of the states have adopted the medical definition of a wound, Virginia is not included in this list. The prevailing doctrine in Virginia, which follows the West Virginia rule as defined by Judge Poffenbarger in *State* v. *Gibson*, 67 W. Va. 548, 68 S. E. 295, 28 L. R. A. (N. S.) 965, is conclusively stated by Mr. Chief Justice Prentis in *Harris* v. *Commonwealth*, 150 Va. 580, 142 S. E. 354, 58 A. L. R. 1316. In that case Harris was indicted under the provisions of section 4402, the charge being that he "did make an assault and him, the said L. E. Collins, feloniously and maliciously did strike and wound, with intent, * * * ." The accused was convicted of unlawful wounding with intent as charged, and sentenced to one

year's confinement in the penitentiary. The proof adduced by the Commonwealth to sustain the charge of malicious wounding, was that Collins received a bruise as a result of a blow administered by Harris with a stick. The single question involved in the case is "Whether, under the maiming act, it is necessary, in order to constitute a wounding and support a conviction for such wounding, the skin must be broken or cut." In reversing the judgment of the trial court, Mr. Chief Justice Prentis said:

"In Bishop on Statutory Crimes (2d ed.), section 314, page 290, in discussing the maiming act, this is stated: 'A "wound" is a breach of the skin, or of the skin and flesh, produced by external violence. * * * Without such parting of the skin, it seems, there can be no wounding; for a man was held not to be wounded when his person was bruised, and his collarbone fractured. Yet a disruption of the internal skin—as, that within the mouth, or the membrane lining the urethra—will suffice.' And the text is supported by the authorities.

"This construction of this statute seems to have been universally followed, a recent case being *State* v. *Gibson*, 67 W. Va. 548, 68 S. E. 295, 28 L. R. A. (N. S.) 965, where it is said: 'As the evidence fails to show any solution or breaking of the skin of the prosecuting witness, lack of an essential element of the offense charged in the indictment is asserted, under the technical rule that there can be no wound, within the meaning of the maiming statute, without a solution or fracture of the skin. This position seems to be well sustained by authority. There must be a complete breaking of the skin, external or internal. Our statute (section 9, chapter 144, Code 1906), in so far as it uses the terms "stab, cut, or wound," is the same as the English statute of 9 Geo. IV, and the term "wound" in that connection has been limited in its meaning to the extent above stated. *R.* v. *Wood*, 4 Car. & P. 381. * * * Anything with which the skin is broken is sufficient, though blunt, provided it is a weapon other than those with which the human body is naturally provided.'

"It is probable that the reason for this seemingly narrow construction of the word 'wound' can be thus explained: First, that statutes defining new crimes should be strictly construed, and also because of the manifest disposition to charge and prosecute as felonies under this statute offenses which heretofore had been classed as simple assaults—misdemeanors. The true purpose and meaning of the statute was doubtless conceived to be to define and punish as felonies those acts which had theretofore been considered misdemeanors only in those cases where it also appeared that there was the felonious intent to maim, disfigure, disable, or kill. However this may be, we find no sufficient reason for departing from a rule which has been so long established. It should cause no failure of justice if those engaged in criminal prosecutions are properly careful in drawing indictments, for in the very same clause of the statute it is provided that if the assailant shall cause any person bodily injury, with the same intent, it constitutes a similar crime."

In the brief of the Attorney General we read:

"It is unfortunate that in the *Harris Case* the Attorney General failed to call to the attention of the court the more recent West Virginia case of *State* v. *Coontz* (1923), 94 W. Va. 59, 117 S. E. 701, in which the West Virginia court had clarified its earlier decision in the *Gibson Case*. In the *Coontz Case* the indictment was in the broad form, as it is in the present case, and the evidence was that the defendant, using his fists, broke the victim's nose, blackened his eyes, bruised his face, and broke a bone in his cheek—but did not break the external skin. A conviction under the maiming statute was sustained.

"So, in the present case, the Commonwealth seeks to have this court clarify its earlier decision in the *Harris Case* in the same manner."

With all deference, we are of opinion that the main point in the *Coontz Case* has been overlooked. In that case the indictment charged that the accused "did unlawfully, feloniously, and maliciously stab, cut and wound one W. L. Mason, and *caused him bodily injury by means of a blow*

*with his fist* with intent" etc. (Italics added.) The jury found the defendant guilty of unlawfully, but not maliciously, injuring and disfiguring the said Mason, as charged in the indictment.

The West Virginia statute, section 9, chapter 144 of the Code, is practically identical with our section 4402 of the Code. In "clarifying" the *Gibson Case*, Meredith, J., said:

"Gibson was charged specifically with 'feloniously and maliciously cutting and wounding,' nothing more, and under the reasoning of the English decisions cited, our conclusions that Gibson's guilt was neither sufficiently proved nor charged were unquestionably proper.

"Judge Poffenbarger went a step further in his reasoning, however, and it is this step which marks the distinction between that case and the present one, and which point defendant has overlooked. At the bottom of page 550 of 67 W. Va. (68 S. E. 296, 28 L. R. A. (N. S.) 965), we find:

"'Our statute has been broadened somewhat by the use of the terms "or by any other means cause him bodily injury with intent," etc. *Under a proper indictment,* any sort of bodily injury, inflicted by any means, with intent to maim, disfigure, or kill, is an offense under this statute, punishable as a malicious or unlawful wounding; but it is not a technical wounding, and an indictment merely for cutting and wounding does not cover it.' This addition to the statute does not alter the meaning of its original terms. It simply introduces a new offense made up of new elements.'

"In other words, Judge Poffenbarger foresaw the case at bar. The indictment of the defendant Coontz is not limited to mere cutting and wounding; it avers in addition, 'caused him bodily injury by means of a blow with his fist;' it is within the scope of the statutory expression, 'or by any means cause him bodily injury,' etc., and is the *proper* indictment referred to by Judge Poffenbarger. This answers sufficiently the contention that the use of an artificial weapon must be alleged and proved. It specifies the means by which the injury was caused, as is stated in point 4 of the syllabus in the *Gibson Case*. 'An indictment

for maliciously or unlawfully causing bodily injury otherwise than by shooting, stabbing, cutting, or wounding should specify the means by which the injury was caused,' and the proof adduced was sufficient to support the charge. Such is not only the proper construction of section 9, chapter 144, Code, but under the modern English statute, 24 & 25 Vict. c. 100, a similar act, the ruling of this case is equally proper in that jurisdiction. See Bishop, Statutory Crimes, (3rd Ed.) 314."

It is to be observed that in the *Gibson Case, supra,* and in the *Harris Case, supra,* the drawing of a "proper indictment" is emphasized. Both opinions draw the distinction between a "wound" and an "injury."

Webster's International Dictionary defines an "injury" as a "detriment, hurt, loss, impairment," while "to wound" is thus defined: "to hurt by violence, to produce a breach or separation of parts, as by a cut, blow or the like."

If a wound, as contended, includes any injury, then there is no reason for the language in the statute "or by any means cause him bodily injury with intent," etc.

To "shoot, stab, cut or wound," under the statute comprise distinct offenses, and to cause bodily injury is likewise a distinct offense. For instance, one who has sprained his ankle has in no sense received a wound.

As stated in the *Harris Case, supra,* and in the *Coontz Case, supra,* when an indictment charges bodily injury, the means by which the injury is caused should be set forth. This has been the rule of law in this Commonwealth since our decision in *Jones* v. *Commonwealth,* 87 Va. 63, 12 S. E. 226. In that case, decided in 1890, Judge Lewis gives the form for a proper indictment when bodily injury is relied upon.

In the case at bar, all that was necessary to allege in the indictment was that Garrett Johnson in and upon one R. W. McAllister, then and there being, an assault did make and with his fist him, the said R. W. McAllister, did feloniously, maliciously and unlawfully beat, ill treat and cause him bodily injury, to-wit, did break two ribs of said

McAllister, with intent in so doing him the said McAllister to maim, disfigure, disable and kill, against the peace and dignity of the Commonwealth.

■ The assignment of error is well founded.

There are other assignments of error dealing with the question of malice and the question of the intent to maim, disfigure, disable and kill.

These assignments are without merit for the reason that they are controlled by our decisions in *Roark* v. *Commonwealth*, 182 Va. 244, 28 S. E. (2d) 693, and *Shackelford* v. *Commonwealth*, 183 Va. 423, 32 S. E. (2d) 682.

For the reasons stated, the judgment is reversed and the case is remanded to the trial court with direction to permit an amendment to the indictment in conformity with the provisions of section 4878 of the Code.

*Reversed and remanded.*

SPRATLEY, J., concurring in result.

I agree with a majority of the court that the judgment ought to be reversed on the ground that the evidence, accepted in the light most favorable to the Commonwealth, is not sufficient to show that the offense charged was committed with malicious intent. At most, there is proof only of an unlawful act. The grounds of reversal in the opinion of the Chief Justice are, I believe, contrary to reason and authority. It looks to me like making bad law to accomplish a good purpose, a purpose which can be attained under settled and accepted principles.

The opinion of the Chief Justice holds, first, that the skin of McAllister not having been broken by the assault, there was no wounding, and, second, that, under the indictment, no conviction could have been had for bodily injury, because the means of such injury is not set forth in the indictment.

It is conceded that under many early English decisions,

based on an English statute, which was never adopted in Virginia, there could be no wound without a solution or fracture of the skin by a weapon other than that with which the human body is naturally provided. *Harris* v. *Commonwealth*, 150 Va. 580, 142 S. E. 354, 58 A. L. R. 1316; *State* v. *Gibson*, 67 W. Va. 548, 68 S. E. 295, 28 L. R. A. (N. S.) 965.

The explanation of the reasons for the English decisions may be as stated in *Harris* v. *Commonwealth, supra;* but these reasons have never prevailed in Virginia. Justice has been said to be the product of the changing definitions of a man's race and the age in which he lives.

Virginia Code, 1942, (Michie), section 4402, broadens the English conception of maiming and enlarges its definition. It looks not to the preservation of the physical availability of the person for defense or military service, but to the maintenance and protection of the completeness of the human members and organs and the preservation of their functions. Under it, the offense of maliciously causing a person bodily injury by any means is cognate with the offense of shooting, stabbing, cutting, or wounding a person. The offenses, although caused by separate means, are of the same degree and the punishment is the same. The distinction between them is so indistinct that they are embraced within the same statute.

The word "wound" has often been defined by textwriters, lexicographers, and in decisions of the courts of this country.

As a verb, the form in which it is used in the statute, Webster's International Dictionary (2d Ed.) Unabridged, defines it as meaning "To hurt by violence"; as a noun, "An injury to the body of a person or animal, esp. one caused by violence, by which the continuity of the covering, as skin, mucous membrane, or conjunctiva, is broken."

It will be observed that as a noun, it is not restricted to instances where the skin has been broken.

In the decisions, we find the following.

In *State* v. *Capawanna*, 118 N. J. L. 429, 193 A. 902:

" * * * It cannot be denied that the complaining witness

was wounded. The definition of 'wound' is as follows: 'A solution of the natural continuity of any of the tissues of the body. Taylor Med. Jurispr. In jurisprudence a wound may be said to exist even if there is no effusion of blood or severing of the skin. No question is raised as to the nature of the tissue damaged, be it skin and appendages, bone, joint or internal organ. * *. *' 2 Bouvier's Law Dictionary, Unabridged, Rawle's Third Revision, p. 3496. * * * the breaking of the jawbone, clearly, under the definitions, amounting to a wounding."

In *Gatlin* v. *State,* 18 Ga. App. 9, 89 S. E. 345:

"In construing section 119, Penal Code, 1910, as to letters threatening to maim, wound, etc., the word 'wound' should not be given a strained or technical signification, but its plain, obvious, and common sense meaning should be attached to it. Under such a construction a 'wound' does not necessarily import a breaking of the skin, but includes injuries of every kind which affect the body, whether they are cuts, lacerations, fractures, or bruises. 4 Words and Phrases (2d Series) 1347; 3 Bouvier's Law Dict. (Rawle's 3d Rev.) 3496; *State* v. *Owen,* 5 N. C. 452, 4 Am. Dec. 571; *State* v. *Hammerli,* 60 Kan. 860, 58 P. 559 (citing Words and Phrases, First and Second Series, Wound)."

In *People* v. *Durand,* 307 Ill. 611, 139 N. E. 78:

"In medicine the word 'wounds' means injuries of every description that affect either the hard or soft parts of the body, and it comprehends bruises, contusions, fractures, luxations, etc. In law the word means any lesion of the body, and the correct definition of a lesion is a hurt, loss, or injury. 2 Pope's Legal Definitions, 1684; *Thompson* v. *Loyal Protective Ass'n,* 167 Mich. 31, 132 N. W. 554. Under the statute of 9 Geo. IV (chapter 21, sec. 12), it has been held in England that in criminal cases to make a wound there must be an injury to the person by which the skin is broken through. 2 Bouvier's Law Dict., p. 851. The decisions under this statute have no binding force in this state, as the statute in question was never the law in this state."

I cannot agree that *Harris* v. *Commonwealth, supra,* upon

which the Chief Justice relies, justifies his conclusion. The facts in that case were: A foreman and a laborer got into a fight and the laborer struck the foreman with a stick causing "a slight bruise over, or near, the collar bone" without breaking the skin. The indictment charged that the accused "did make an assault on him, the said L. E. Collins, feloniously and maliciously did strike and wound, with intent to him, the said L. E. Collins, then and there, to maim, disfigure, disable, or kill." Prentis, P., in the course of the opinion, said, "This indictment is too narrow in its terms to include as a felony the bruise which was, in fact, inflicted upon Collins by the accused. If the indictment had also charged that the assault *and bodily injury* were done maliciously with the felonious intent to maim, etc., the evidence would have been sufficient to support the conviction of felony." (Italics supplied.)

We have been cited to no Virginia case, nor have I found one, in which it has been held that a broken bone was not a wound.

Neither in the above case, nor in *State* v. *Gibson, supra,* cited in support, was a broken bone involved. So much of the opinion as is quoted from the earlier cases relating to the matter of broken bones may be regarded simply as dicta.

Under the view of the Chief Justice, if the defendant, with his fists, had fractured the skull of McAllister, had dislocated his vertebrae, or grievously bruised his spleen, kidneys, or intestines, without breaking the internal or external skin, he would not have caused a wound. This is so opposed to the ordinary and commonly accepted meaning of the word "wound," and to what seems to me to be common sense, that I am unable to accept the conclusion as correct. If a fractured skull, a broken vertebra or rib, is not a "wound," what is it?

That we have not felt the English decisions to be binding on us, in view of our statute, is evidenced by the case of *Shackelford* v. *Commonwealth*, 183 Va. 423, 32 S. E. (2d) 682. There a bodily injury was inflicted by the fists of the accused, and we disregarded the English requirement that

the injury be caused by a weapon other than that which nature provides for the human body.

In *State* v. *Coontz*, 94 W. Va. 59, 117 S. E. 701, a blow from the fist was also held sufficient as a means of the offense.

One who suffers from a sprained ankle or broken ribs, whether caused by the violence of another or by accident, has been wounded in his person, or the word "wound" has lost the significance given to it by many courts, lexicographers, and the general public. Can we say that a man or a soldier suffering from shell shock did not receive a wound merely because his skin was not broken? If the victim of the assault in this case had died as a result of the blows against his body, would he not have died as the result of wounds inflicted by his assailant?

The indictment against Johnson was in the express language of the statute. Students of the law are taught that indictments cannot be drawn in better form. There was no objection to the indictment. No bill of particulars was requested by the defendant.

Under the statutes of jeofails, Virginia Code, 1942, (Michie), sections 4878 and 4879, the failure to include in the indictment the means of the bodily injury, if that be a defect, was waived, and is not reversible error. The defendant makes no point of the omission, as evidenced by the following statement in his brief: "While in the instant case, though the indictment alleges bodily injury, and the jury could have so found under the indictment, yet the jury found the accused guilty of malicious wounding, and the evidence shows the accused did not wound the prosecutor." His assignment of error is based solely upon the fact that the jury found the accused guilty of wounding instead of causing a bodily injury.

In *Jones* v. *Commonwealth*, 87 Va. 63, 12 S. E. 226, the court merely held that an indictment charging bodily injury and setting forth the means by which the injury was caused was sufficient. The judgment was reversed on grounds wholly unrelated to the present question.

In *Anable* v. *Commonwealth*, ·24 Gratt. (65 Va.) 563, Moncure, President, referring to our criminal statutes, said that their chief object "was to prevent the acquittal of guilty persons on account of some nice technical distinction between the offense charged and the offense proved against a person accused of a criminal offense." This statement we approved in *Pflaster* v. *Commonwealth*, 149 Va. 457, 141 S. E. 115, and in *Branch* v. *Commonwealth*, *ante*, p. 394, 35 S. E. (2d) 593.

This rule of decision, in pursuance of the policy of dispensing justice according to the very right of the case, was, by this court, early established in cases where the offenses charged were cognate, of the same degree, and the punishment the same, although the crimes were defined in separate statutes. In *Dowdy* v. *Commonwealth*, 9 Gratt. (50 Va.) 727, decided in 1852, the offense was receiving stolen property, knowing it to have been stolen. In *Leftwich* v. *Commonwealth*, 20 Gratt. (61 Va.) 716, decided in 1870, the offense was obtaining property by false pretenses. In *Price* v. *Commonwealth*, 21 Gratt. (62 Va.) 846, also decided in 1870, the offense was receiving stolen property, knowing it to have been stolen. In each of these cases it was held that upon an indictment simply charging larceny, the Commonwealth may show either that the subject of larceny was received with a knowledge that it was stolen, or that it was obtained by a false token or false pretenses.

In *Anable's Case, supra*, proof that the accused obtained money by false pretenses was held to sustain an indictment for larceny.

The situation in the present case is analogous. Proof that the defendant "by any means" maliciously caused McAllister bodily injury, with intent to maim, disfigure, or kill should be sufficient to convict him of the offense of malicious wounding. The latter offense is cognate, of the same degree and subject to the same punishment. The language of the jury's verdict did not change the degree of his offense, nor the measure of his punishment. There may be different

elements in the offense of maiming; but they relate only to the means and not to the degree of the offense.

For the foregoing reasons, I cannot agree with the grounds for reversal assigned by the Chief Justice, and concurred in by Justices Holt and Browning.

HUDGINS and EGGLESTON, JJ., concur in this opinion.

GREGORY, J., concurring in result.

I think the verdict and judgment should be reversed because the evidence fails to support the verdict of malicious assault under Code sec. 4402 (Michie) 1942.