# Richmond

## WILBUR BRYANT AND LEONARD BRYANT v. COMMONWEALTH OF VIRGINIA.

April 25, 1949.

Record No. 3495.

Present, All the Justices.

The opinion states the case.

*John B. Boatwright* and *A. L. Pitts, Jr.*, for the plaintiffs in error.

*J. Lindsay Almond, Jr., Attorney General*, and *Ballard Baker, Assistant Attorney General*, for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

On December 13, 1947, Wilbur and Leonard Bryant, brothers, hired E. J. Howell, in Charlottesville, to take them in his taxicab to the home of their sister, who lived in

Buckingham county. Both of the Bryants were drinking and were "pretty full." Between 7:30 and 8:00 p. m. they had the taxicab stop in Buckingham county about seven miles south of Scottsville, at a small store and filling station operated by Andy Smith. There were no lights in the station. The Bryant boys called Smith from his living quarters in the rear of the small store and grabbed him, beat him with their fists, kicked him, carried him down the road about two miles, brought him back and kicked him out of the taxicab. The brothers were jointly indicted, jointly tried, and convicted under the maiming act (Sec. 4402 of the Code), and each sentenced to confinement in the penitentiary for three years.

The first assignment of error is based on the refusal of the trial court to sustain defendants' motion to quash the indictment.

The indictment contains three counts The first count charges defendants jointly with the assault upon D. A. Smith "and with their fists, and feet incased in shoes, him the said D. A. Smith, did unlawfully, feloniously and maliciously beat, illtreat and cause bodily injuries, to-wit: Did beat and kick the said D. A. Smith about the face, body and limbs, and did thereby cause internal injuries, bleeding of the nose, mouth and face, of the said D. A. Smith, with intent in so doing him the said D. A. Smith then and there to maim, disfigure, disable and kill against the peace and dignity of the Commonwealth * * *." The second count, with appropriate change in language, charges Leonard Bryant as principal and Wilbur Bryant as present aiding and abetting in the commission of the offense. The third count charges Wilbur Bryant as pricipal with Leonard Bryant present aiding and abetting.

The cavalier manner in which defendants argued the question, both in the lower court and in this court, reveals their lack of faith in their contention. They assigned no reason in the lower court for their conclusion, but simply said that the indictment should be quashed because it was

"insufficient in law." They made no attempt to comply with Rule 22.

In this court they state their position in one paragraph thus:

"Bill of Exception No. 1 deals with the indictment which contains three counts, very long and involved and charges an assault under the maiming act and charges these petitioners with an attempt to kill D. A. Smith, commonly called Andy Smith. There is also the charge of conspiracy."

A casual reading of the indictment shows that it charged neither an attempt to kill nor a conspiracy. It is stated in the indictment that defendants feloniously, unlawfully, and maliciously inflicted bodily injuries with their feet and fists upon D. A. Smith with the intent to maim, disfigure, disable and kill. It describes the injuries, the means by which and the intent with which they were inflicted. The draftsman studiously avoided the criticism made to an indictment under this act by Chief Justice Prentis, in *Harris* v. *Commonwealth*, 150 Va. 580, 142 S. E. 354, 58 A. L. R. 1316. There the indictment omitted all reference to bodily injuries, as to which it was said:

"It should cause no failure of justice if those engaged in criminal prosecutions are properly careful in drawing indictments, for in the very same clause of the statute it is provided that if the assailant shall cause any person bodily injury, with the same intent, it constitutes a similiar crime. This indictment is too narrow in its terms to include as a felony the bruise which was in fact inflicted upon Collins by the accused. If the indictment had also charged that the assault and bodily injury were done maliciously with the felonious intent to maim, etc., the evidence would have been sufficient to support the conviction of felony."

This form of indictment was approved in *Williams* v. *Commonwealth*, 153 Va. 987, 151 S. E. 151; *Johnson* v. *Commonwealth*, 184 Va. 409, 35 S. E. (2d) 594, and *Dawkins* v. *Commonwealth*, 186 Va. 55, 41 S. E. (2d) 500.

Defendants' second assignment of error is grounded on the refusal of the trial court to compel the Commonwealth

to elect on which one of the three counts it would prose-
cute.

■■ Where an indictment charges different felonies in
separate counts the prosecution may be compelled to elect
if it appears that the accused would be put to a disad-
vantage in presenting his defense, or that the minds of the
jury might be confused or distracted from proper considera-
tion of the evidence on the main issues. Whether the Com-
monwealth should be compelled to elect is ordinarily within
the sound judicial discretion of the trial judge, whose deci-
sion will not be reversed on appeal unless it appears that
the rights of the accused may have been adversely affected.
Michie's Digest of Virginia & West Virginia Reports, Vol-
ume 5, Indictments, Informations and Presentments, sec. 66,
etc.

■ The present indictment contains three counts pertain-
ing to the same offense. The only difference is that one
count charges both defendants with inflicting the bodily in-
juries, and the other two charge one of the defendants as
principal and the other as an aider and abettor.

■ In *King* v. *Commonwealth*, 165 Va. 850, 183 S. E.
173, we held that an indictment may contain any number of
counts charging the commission of a single offense stated
in different ways so as to meet the various phases of proof
that might be offered.

Defendants' third contention is that temporary bodily
injuries made with weapons with which a person is endowed
by nature—in this instance, the feet and fists—will not
sustain a conviction of a felony under the maiming act.

■ The concept of mayhem at common law was forcibly
and violently depriving another of the use of such members
of the body as might render him less able to defend him-
self, or to annoy his adversary. Professor Minor, in his
Synopsis of the Law of Crimes and Punishment, p. 66,
defines mayhem as "such hurt of any part of a man's body
whereby he is rendered *less able in fighting to defend himself,
or to annoy his adversary*, e. g., cutting off or disabling
his hand or finger, or striking out his eye or *front* tooth."

The provisions of the maiming statute (Sec. 4402) make acts, which had theretofore been regarded as misdemeanors, felonies, where such acts were done with the specific intent to maim, disfigure, disable or kill. The early Virginia decisions, in construing the word "wound" as used in the act, followed its common law definition. Professor Minor, p. 66 of Minor's Synopsis of the Law of Crimes and Punishment, said:

"Wounding is often defined as *the breaking of the true skin*, whether with a *sharp or blunt instrument*,' but *not bruising; nor breaking bones;* nor *biting off the nose or a finger*, the law contemplating the use of an instrument *other than the teeth*. The *medical* definition of a wound, however, which the law now adopts, is, 'a recent solution of continuity in the soft parts.' "

The similarity and the difference between the English maiming act (9 Geo. IV, Chap. 31, sec. 12a), and the Virginia act were noted in *Harris* v. *Commonwealth, supra*. There it was suggested that a more comprehensive meaning should be given the word "wound," but the court in fact did not apply the broader or more modern meaning.

However, in *Johnson* v. *Commonwealth*, 184 Va. 409, 35 S. E. (2d) 594, at least three members of the court expressed the opinion that in the absence of proof tending to show that the true skin was broken, the proof of two broken ribs was sufficient to sustain a conviction of felonious wounding under the statute. The concurring opinion contains this significant language:

"Proof that defendant by 'any means' maliciously caused McAllister bodily injury with intent to maim, disfigure, or kill, should be sufficient to convict him of the offense of malicious wounding."

This was Professor Minor's construction of the statute. On p. 67 of his Synopsis of the Law of Crimes and Punishment, he said:

"Bodily injury comprehends, it would seem, *any bodily hurt* whatsoever. The words of the English statute

are 'grievous bodily harm;' which are understood to include such injuries only as may endanger life."

The testimony clearly proves that defendants made an assault upon D. A. Smith; that they struck him on his face and head and kicked him; that as a result of the beating, blood ran from his ears, nose and mouth. He also suffered a small cut inside the mouth. Dr. C. S. Gardner, who examined Smith within forty-eight hours after the beating, testified that Smith's left ear and lips were swollen and bruised and that he was still suffering from a small cut inside of his mouth. The injuries inflicted were not sufficient to confine Smith to his bed or to cause him to lose any time from his business. However, they were sufficient to bring the case within the definition of the phrase "bodily injuries" used in the statute.

Mr. Justice Spratley, speaking for the court in *Dawkins* v. *Commonwealth*, 186 Va. 55, 41 S. E. (2d) 500, said:

"The test of the offense of maliciously or unlawfully causing bodily injury is the intent with which the result is accomplished rather than the nature of the means, where the means are specified and established. Thus, one may permanently maim, disfigure, disable, or kill with the fists, or knees, if the force is applied with violence and brutality. Also, one may gouge out the eye of another with his fingers, stomp another to death with his feet or bite off a portion of his body. The words of the statute, 'by any means,' include such means."

We turn to the evidence to ascertain whether it supports the verdict of the jury finding that defendants made the assault upon Smith with the specific intent to maim, disfigure, disable or kill him.

At the time of the trial Wilbur Bryant, a corporal in the army, was 18 years old, 5 feet, 8 inches tall, and weighed 180 pounds. Leonard Bryant had been honorably discharged from the army. He was 27 years old, 5 feet, 10 inches tall, and weighed 178 pounds. D. A. Smith was an old man 76 years of age. Several years prior to the date of the assault he had had some difficulty with Wilbur Bryant,

though at the time he thought that neither retained any hostile feelings against the other.

When Howell, at the direction of the brothers, stopped his taxicab at Smith's unlighted filling station, one of the brothers turned off the lights of the taxicab and, with a mask over his face, went with his brother to the rear of the store where Smith lived, and called him out of his dwelling house under the pretense of desiring to buy gasoline. When Smith appeared at the door with a flashlight, one of defendants grabbed him from behind, the other grabbed his flashlight and threw it away, and said "Andy you have done your last do, you will never bother anybody else any more after we get done with you tonight." He was struck several blows on the face and head, and while being forced into the taxicab, he hollered "murder." Thereupon, one of defendants slapped his hand over Smith's mouth and held it there. Leonard asked him did he have a gun or knife or any money, to which Smith replied he had neither, but he did have about a dollar in change. He was told that "that is no good, I don't want that." After the old man was shoved into the taxicab, one brother sat on one side of him and held him by the arm, and the other sat on the other side and held his other arm. After driving two or more miles, defendants ordered the driver of the taxicab to stop and said "this is a damn good place to get rid of him."

E. G. Howell, driver of the taxicab, testified that during the two-mile ride down the road defendants were quarreling with and threatening to kill Smith. After defendants requested or demanded that Howell stop the taxicab, they continued to quarrel with the old man and threaten his life. Howell further said: "I told them that he was an old man and not to hurt him and they ought to take him home. They refused and threatened me and I turned the car around and started back to the old man's place. We turned around and came back to the store and they (defendants) opened the back door on the car * * * and shoved him out," while the taxicab was in motion.

"They did not kick him." Smith said that when they shoved him out of the car one of the defendants did kick him.

██ "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. It may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury. Its existence is a question of fact to be determined by a jury under proper instructions." *Dawkins* v. *Commonwealth, supra.*

██ The evidence disclosed not only express statements by defendants of an intention to kill Smith, but a brutal, unprovoked attack upon him at night, with a mask on; the enticement of an old man from his home and by overwhelming force carrying him to an undisclosed destination, with the expressed intention of killing him. It is to be noted that the return of the taxicab to the store was a result of the driver's action and not on the suggestion of either defendant. The jury could have found from the acts and the threatening language used, that the defendants were actuated by malice—"a condition of mind which shows a heart regardless of social duty and fatally bent on mischief." Instead of so finding, the jury returned a verdict of unlawful wounding.

Defendants' fourth contention is that the court committed reversible error when, on motion of the Commonwealth, it granted Instruction A, which reads as follows:

"The Court instructs the jury that the accused is presumed to be innocent and that presumption goes with him through all stages of the trial. The Commonwealth, upon whom the burden of proof rests, must show beyond a reasonable doubt that the defendant is guilty. Proof beyond a reasonable doubt does not necessarily mean proof amounting to absolute certainty, nor proof beyond all possibility of mistake, but if, after considering all the evidence and circumstances produced in the case, the jury can say that they have an abiding conviction of the truth of the charges contained in the indictment, then they are satisfied

beyond a reasonable doubt and should find the defendants guilty."

Defendants' objection to the instruction is that it "related back to the indictment, which as previously stated, contained three counts and it would be necessary for the jury to return the indictment in connection with this instruction in order to understand the instruction, and we do not feel that it is a proper instruction to be given in this case when the indictment itself is not clear."

These objections are not well·taken. The charges in the different counts in the indictment were stated with reasonable clearness. In view of the other instructions given at the request of the Commonwealth and defendants, the jury could not have been prejudiced or misled. An instruction in substantially the same form was approved in *McDaniel* v. *Commonwealth*, 165 Va. 709, 181 S. E. 534.

The Commonwealth's Instruction H told the jury that "under the indictment in this case, if warranted by the evidence, you may find any one of the four following verdicts, to-wit: (1) Malicious wounding or maliciously causing bodily injury, (2) Unlawful wounding or unlawfully causing bodily injury, (3) Assault and Battery, (4) Not Guilty." The second paragraph of this instruction correctly states the minimum and maximum punishment provided by statute for the three grades of the offense.

Defendants contend that the court committed reversible error on other rulings in the course of the trial, but they . frankly admit that the specific rulings and the grounds of objection thereto were not made a part of the record. Under these circumstances, we cannot consider them, as we must pass upon the record duly authenticated by the trial judge, and not upon counsel's recollection of what occurred.

On the whole case we find no reversible error.

The judgment will be

*Affirmed.*