COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Humphreys and Chafin
Argued at Chesapeake, Virginia


TYREE LAMONT MOORE

MEMORANDUM OPINION[*] BY
v.      Record No. 0828-13-1      JUDGE TERESA M. CHAFIN
                                  MAY 6, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Carl E. Eason, Jr., Judge

Afshin Farashahi for appellant.

Susan Mozley Harris, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


In a bench trial, Tyree Lamont Moore ("appellant") was convicted of causing bodily

injury to his girlfriend by strangulation, in violation of Code § 18.2-51.6. On appeal, appellant

contends that the evidence was insufficient to support a finding that there was a wounding or

bodily injury as required by the strangulation statute. Appellant next contends that even if the

evidence was sufficient to show a bodily injury, the evidence was still insufficient to prove that

the act of strangulation caused the injury. Finally, appellant argues that he should not have been

convicted of violating the terms of his probation[1] because the evidence was insufficient to prove

the strangulation charge.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] In addition to his conviction for strangulation, appellant also appeals four judgments
convicting him of violating his probation and revoking previously suspended sentences. The
trial court imposed an active term of five years and six months of his previously suspended
sentences for two counts of attempted capital murder of a police officer, unlawfully shooting or
throwing a missile at an occupied vehicle, and larceny of an animal.

Background

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)). So viewed, the evidence showed that on July 28, 2012, Keisha Wilson, appellant's live-in girlfriend, was riding in a car with appellant when she "popped" her son after "fussing" with him. Wilson testified that appellant was angry because she had "popped" her son, and after exiting the car and entering their home, they argued about it. Wilson testified that when she came out of the kitchen holding her baby, appellant "hit [her] in [her] face twice and then he choked [her] and pushed [her] to the floor." She described the "choking" incident as appellant having "his hands around [her] throat [and was] squeezing [her] neck." Wilson fought appellant in an effort to get to her feet. Once she was able to stand, Wilson said that she "grabbed her kids and ran out of the house."

Wilson reported the incident to the police, and Suffolk Police Officer D.K. Gawryluk was dispatched to the residence. On arrival, Gawryluk noticed that Wilson was "very upset" and "very scared." Several minutes passed before Wilson was able to give an account of appellant's assault. According to Gawryluk, appellant had "fled the scene" by the time he arrived.

Gawryluk testified that he saw a "small laceration or scratch" on Wilson's neck, minor swelling to her forehead, and blood on her left shoulder. Due to the swelling of her forehead, Gawryluk arranged for the Suffolk rescue squad to evaluate Wilson. After the rescue squad "cleaned up . . . blood on her left shoulder," Wilson declined further emergency care. Wilson did testify, however, that "there was swelling around [her] neck" because of appellant's squeezing.

Analysis

Appellant contends that the evidence was insufficient to sustain his conviction of strangulation. More specifically, appellant urges that there was no wounding in this case because there was no breach in the skin and that there was insufficient evidence to prove bodily injury. Further, even assuming Wilson sustained such bodily injury or was wounded, appellant argues that the evidence was insufficient to prove that such bodily injury or wounding was caused by the strangulation. We disagree.

## A. "BODILY INJURY"

A defendant violates Code § 18.2-51.6, a Class 6 felony, when that defendant "without consent impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person, resulting in the wounding or bodily injury of such person."

In this case, appellant's sufficiency argument requires us to ascertain the meaning of the term "bodily injury" as contained in Code § 18.2-51.6.[2] "'Because statutory interpretation presents a pure question of law, it is subject to de novo review' by an appellate court." Hutter v. Virginia Emp't Comm'n, 50 Va. App. 590, 594, 652 S.E.2d 151, 153 (2007) (quoting Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 925 (2006)). "In sum, pure statutory interpretation is the prerogative of the judiciary." Id. (internal quotation marks and citation omitted).

> Under accepted principles of statutory construction, "words and phrases used in a statute should be given their ordinary and usually accepted meaning unless a different intention is fairly manifest." Woolfolk v. Commonwealth, 18 Va. App. 840, 847, 447 S.E.2d 530, 534 (1994). In addition, proper construction seeks to harmonize the provisions of a statute both internally and in relation to other statutes . . . . Legislative purpose can best be

---

[2] The Commonwealth conceded at trial that insufficient evidence was presented to prove that a wounding resulted from appellant putting his hands around Wilson's neck. The trial court agreed, only making a finding of guilt as to bodily injury by strangulation. As such, we focus our analysis on the "bodily injury" portion of the strangulation statute.

"'ascertained from the act itself when read in light of other statutes relating to the same subject matter.'" Moreno v. Moreno, 24 Va. App. 190, 197, 480 S.E.2d 792, 796 (1997) (citation omitted). The doctrine of *pari materia* teaches that "'statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great, connected homogenous system, or a simple and complete statutory arrangement.'" Id. at 198, 480 S.E.2d at 796 (citation omitted).

Hulcher v. Commonwealth, 39 Va. App. 601, 605-06, 575 S.E.2d 579, 581 (2003).

Code § 18.2-51, often labeled the malicious wounding statute,[3] and Code § 18.2-51.6 are part of the same statutory scheme, and were adopted to protect the physical well-being of persons. Concluding that the term "bodily injury" has one meaning in the context of Code § 18.2-51, but has another meaning within the context of Code § 18.2-51.6, when the two statutes are part of the same legislative scheme and the relevant language of the two statutes is identical, would be illogical. Accordingly, reading these statutes *in pari materia*, it is clear that the legislature intended the term "bodily injury" to hold its "everyday, ordinary meaning" throughout the entire statutory scheme.

In English v. Commonwealth, 58 Va. App. 711, 715 S.E.2d 391 (2011), this Court interpreted the term "bodily injury" in the context of Code § 18.2-51, the malicious wounding statute. Nevertheless, the definition set forth in English is instructive here.

Like appellant, the defendant in English argued that the evidence was insufficient to prove a bodily injury because the victim experienced no "breach of the skin." Id. at 717, 715 S.E.2d at 394. In construing the phrase "bodily injury," this Court gave the term its "'everyday,

---

[3] Code § 18.2-51 states,

> [i]f any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

ordinary meaning' . . . which needs no technical, anatomical definition." Id. at 718, 715 S.E.2d at 395 (quoting Luck v. Commonwealth, 32 Va. App. 827, 832, 531 S.E.2d 41, 43 (2000) (interpreting bodily injury under Code § 18.2-51.1)). See also Floyd v. Commonwealth, 31 Va. App. 193, 522 S.E.2d 382 (1999) (interpreting bodily injury under Code § 18.2-52).

Bodily injury "'includes soft tissue injuries, at least those which require medical attention and have some residual effect.'" English, 58 Va. App. at 718, 715 S.E.2d at 395 (quoting Ronald J. Bacigal, Criminal Offenses and Defenses 46 (2010-11 ed.) (citation omitted). Thus, we did not establish a minimum threshold for determining whether bodily injury was inflicted on a victim. Instead, we determined only that "bodily injuries" included, *but were not limited to*, those injuries which required medical attention or had some residual effects. Therefore, we do not read English to mean that all bodily injuries must include those that require medical attention or that have some residual effects. "'Bodily injury comprehends, it would seem, any bodily hurt whatsoever.'" English, 58 Va. App. at 718, 715 S.E.2d at 395 (quoting Bryant v. Commonwealth, 189 Va. 310, 316, 53 S.E.2d 54, 57 (1949) (citation omitted)).

A person with a bodily injury experiences any "'detriment, hurt, loss, [or] impairment' that could fairly be considered an injury to the human body." Id. at 718-19, 715 S.E.2d at 395 (quoting Johnson v. Commonwealth, 184 Va. 409, 416, 35 S.E.2d 594, 596 (1945) (broken ribs are a bodily injury)). A victim "need not experience any observable wounds, cuts, or breaking of the skin" to prove a bodily injury. Id. at 719, 715 S.E.2d at 395.

## B. SUFFICIENCY OF THE EVIDENCE

Appellant contends that "[e]ven assuming that the Commonwealth's evidence established a wounding or bodily injury . . ., the evidence did not show that such wounding or bodily injury was caused by strangulation."

> Where the sufficiency of the evidence is challenged after
> conviction, it is our duty to consider it in the light most favorable

- 5 -

to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" James v. Commonwealth, 53 Va. App. 671, 675, 674 S.E.2d 571, 573 (2009) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted)).

In this case, appellant hit Wilson twice in the face and pushed her to the floor. While on top of Wilson, appellant had his hands around her neck and was squeezing his hands so as to cut off her circulation. Wilson was able to escape, but walked away with swelling around her neck.[4] It is reasonable to infer that when appellant compressed Wilson's neck he caused a soft tissue injury that resulted in the swelling. Soft tissue injuries clearly fall under the ordinary meaning of bodily injury, which is broad enough to encompass any bodily hurt, detriment, or loss. Thus, we hold that the trial court had credible evidence before it that supported its finding that appellant strangled Wilson in violation of Code § 18.2-51.6.

C. PROBATION REVOCATION

Appellant also contends on appeal that the revocation of four previously suspended sentences for two counts of attempted capital murder, unlawfully throwing a missile at an occupied vehicle, and larceny of an animal should be reversed because "the evidence was insufficient to show that the act of strangulation caused such wounding or bodily injury." Since the trial judge specifically ruled that the strangling conviction "was the only basis" for the

---

[4] Swelling, in a medical sense, is the transient abnormal enlargement of a body part or area not due to cell proliferation. See, e.g., Taber's Cyclopedic Medical Dictionary 2253 (21st ed. 2009).

revocation, appellant contends it was error to rule he had violated the terms and conditions of his probation.

First, a "trial court is empowered to revoke a suspended sentence for misconduct occurring after the initial suspension of sentence and prior to the expiration of the period of suspension." Canty v. Commonwealth, 57 Va. App. 171, 175-76, 699 S.E.2d 526, 528 (2010) (citing Collins v. Commonwealth, 269 Va. 141, 147, 607 S.E.2d 719, 722 (2005)). "The cause deemed by the court to be sufficient for revoking a suspension must be reasonable cause." Hamilton v. Commonwealth, 217 Va. 325, 327, 228 S.E.2d 555, 556 (1976) (internal citations and quotations omitted). The "revocation of a suspended sentence lies in the discretion of the trial court and that . . . discretion is quite broad." Peyton v. Commonwealth, 268 Va. 503, 508, 604 S.E.2d 17, 19 (2004). On appeal from a revocation proceeding, the trial court's "'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" Keselica v Commonwealth, 34 Va. App. 31, 35, 537 S.E.2d 611, 613 (2000) (quoting Davis v. Commonwealth, 12 Va. App. 81, 86, 402 S.E.2d 684, 687 (1991)).

Because we have found the evidence sufficient to support appellant's underlying strangulation conviction, the appeal of the revocation of appellant's suspension of sentences is moot and we will not address it. Patterson v. Commonwealth, 12 Va. App. 1046, 1049-50, 407 S.E.2d 43, 45 (1991).

Affirmed.