COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Decker, Judge Humphreys and Senior Judge Annunziata
Argued by videoconference

**PUBLISHED**

TROY McGOWAN

v.      Record No. 0436-20-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE ROSEMARIE ANNUNZIATA
NOVEMBER 24, 2020

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
David F. Pugh, Judge Designate

David W. Anderson, II, Assistant Public Defender (Miranda Mayhill,
Assistant Public Defender, on brief), for appellant.

Maureen E. Mshar, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

The trial court convicted Troy McGowan, appellant, of violating a protective order by

committing an assault and battery that resulted in bodily injury, in violation of Code

§ 16.1-253.2(C).  On appeal, appellant challenges the sufficiency of the evidence to support his

conviction.[1]  For the following reasons, we affirm.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial."  Gerald v.

Commonwealth, 295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381

(2016)).  In doing so, we discard any of appellant's conflicting evidence and regard as true all

---

[1] The trial court also convicted appellant of assault and battery of a family member, in
violation of Code § 18.2-57.2.  Appellant does not challenge that conviction on appeal.

credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. Id. at 473.

On November 24, 2018, L.M. obtained a permanent protective order against appellant, with whom she had a young son. The protective order prohibited appellant from having "contact of any kind with" L.M. except as permitted by a custody or visitation order and from "commit[ting] acts of family abuse or criminal offenses that result in injury to person or property." On the morning of December 13, 2018, appellant knocked on L.M.'s front door. L.M. told appellant to "go away" and walked to her bedroom.

A few minutes later, L.M. heard a noise behind her house. She ran out of her bedroom and saw appellant standing inside her hallway. L.M. returned to her bedroom and grabbed her son. Appellant followed L.M. into the bedroom and asked to hold the child, but L.M. refused and "balled up" with the child in her arms. L.M. testified that, in response, "[appellant] bit me on my leg and so I just screamed, and then he just walked out the front door." L.M. subsequently clarified that appellant had bitten her on her knee. She did not remember if appellant had left a bite mark and admitted that she did not look at her knee after the incident.

A few hours later, L.M. went to the police station to report the incident. A police officer asked to see L.M.'s knee, so L.M. pulled up her left pantleg. The officer photographed the knee, which had a spot of "discoloration" on the kneecap. L.M. did not know if the photograph depicted "where" appellant had bitten her because she could not "remember [which] leg it was." L.M. testified that she suffered from "hypomelanosis," a condition that causes a "lack of pigment on certain parts of [her] body, like on [her] knee." She testified that the "coloration" of her knee as displayed in the photograph is how her knee "usually looks." L.M. did not tell the officer at the police station about her skin condition.

Appellant did not present any evidence and argued that the evidence failed to prove that "an injury ha[d] occurred." He contended that L.M. had "explained that she ha[d] a skin condition that cause[d] some of the discoloration seen" in the photograph. The trial court convicted appellant of violating a protective order by committing an assault and battery that resulted in bodily injury. The court believed L.M.'s testimony but noted "that she may have told an untruth to [the] officer" at the police station. The court held,

> [t]he key issue here is whether or not there was an assault and battery on [L.M.], the witness, and whether or not he came in contact with her in violation of the protective order. . . . Not some scars on the knee or anything. The felony charge is grounded on did he violate the protective order by not having contact, one, and by not committing any injury to her.
>
> . . . [T]he order provides that [appellant] shall not commit acts of family abuse or criminal offense that result[] in injury to person or property. And it goes on, that [appellant] shall have no contact of any kind with [L.M.].
>
> So it doesn't have to be injury to her at all. He wasn't supposed to have any contact with her. . . . He comes into the house unauthorized, uninvited. He contacts her. . . . [H]e bites her—I believe that happened—and the rest speaks for itself. . . .

This appeal follows.

## ANALYSIS

Appellant argues that the evidence was insufficient to sustain his conviction under Code § 16.1-253.2(C) because it did not establish that L.M. had suffered a "bodily injury." That argument requires us to interpret the phrase "bodily injury" in the context of Code § 16.1-253.2(C).

"[U]nder basic rules of statutory construction, we determine the General Assembly's intent from the words contained in the statute." Ricks v. Commonwealth, 290 Va. 470, 477 (2015) (quoting Elliott v. Commonwealth, 277 Va. 457, 463 (2009)). We "are bound by the plain meaning of that language and may not assign a construction that amounts to holding that

- 3 -

the General Assembly did not mean what it actually has stated." Id. In addition, "[p]roper construction seeks to harmonize the provisions of a statute both internally and in relation to other statutes." Hulcher v. Commonwealth, 39 Va. App. 601, 605 (2003) (quoting Moreno v. Moreno, 24 Va. App. 190, 197 (1997)). "The Code of Virginia constitutes a single body of law, and other sections can be looked to where the same phraseology is employed." King v. Commonwealth, 2 Va. App. 708, 710 (1986) (citing First National Bank of Richmond v. Holland, 99 Va. 495, 504 (1901)).

Before a 2016 amendment to the protective order statute, a respondent to a protective order was guilty of a Class 6 felony if he "commit[ted] an assault and battery upon any party protected by the protective order, resulting in *serious* bodily injury to the party." 2016 Va. Acts ch. 583 (emphasis added); see also Code § 16.1-253.2(C). This Court initially interpreted the phrase "serious bodily injury," as used in that statute, in Nolen v. Commonwealth, 53 Va. App. 593, 597 (2009). First, we held that a "bodily injury" means "*any bodily hurt* whatsoever." Id. at 598 (quoting Bryant v. Commonwealth, 189 Va. 310, 316 (1949) (defining the phrase in the context of a predecessor of the malicious wounding statute)). Next, we added that for a bodily injury to be "serious," it must "fairly and reasonably be deemed not trifling, grave, giving rise to apprehension, giving rise to considerable care, and attended with danger." Id. at 599.

In 2016, however, the General Assembly amended Code § 16.1-253.2(C) to remove the word "serious." 2016 Va. Acts ch. 583. Thus, the statute now provides that a respondent to a protective order who "commits an assault and battery upon any party protected by the protective order resulting *in bodily injury* to the party . . . is guilty of a Class 6 felony." Code § 16.1-253.2(C) (emphasis added).

Two years after <u>Nolen</u>, this Court construed the phrase "bodily injury" in the context of the malicious wounding statute.[2] <u>English v. Commonwealth</u>, 58 Va. App. 711, 718 (2011). As in <u>Nolen</u>, we relied on <u>Bryant</u> to hold that the "'everyday, ordinary meaning'" of the phrase includes "'*any bodily hurt* whatsoever.'" <u>Id.</u> (first quoting <u>Luck v. Commonwealth</u>, 32 Va. App. 827, 832 (2000); and then quoting <u>Bryant</u>, 189 Va. at 316). That everyday meaning "includes any 'detriment, hurt, loss, [or] impairment' that could fairly be considered an injury to the human body." <u>Id.</u> (quoting <u>Johnson v. Commonwealth</u>, 184 Va. 409, 416 (1945)). We further explained that "[t]o prove a bodily injury, the victim need not experience any observable wounds, cuts, or breaking of the skin. Nor must she offer proof of 'broken bones or bruises.'" <u>Id.</u> at 719 (quoting <u>Luck</u>, 32 Va. App. at 831-32). "[I]nternal injuries—no less than external injuries—fall within the scope" of bodily injuries. <u>Id.</u>

The Supreme Court has similarly construed the phrase "bodily injury" in the context of the strangulation statute.[3] <u>Ricks</u>, 290 Va. at 477-79. The Court found that the "everyday, ordinary meaning" of the phrase that we applied for the malicious wounding statute in <u>English</u> was equally applicable for the strangulation statute. <u>Ricks</u>, 290 Va. at 478-79. Thus, the Court held that a "bodily injury," as proscribed by the statute, is "any bodily injury whatsoever and includes an act of damage or harm or hurt that relates to the body; is an impairment of a function of a bodily member, organ, or mental faculty; or is an act of impairment of a physical condition." <u>Id.</u> at 479.

---

[2] "If any person maliciously shoot, stab, cut, or wound any person or by any means cause him *bodily injury*, with the intent to maim, disfigure, disable, or kill, he shall . . . be guilty of a Class 3 felony." Code § 18.2-51 (emphasis added).

[3] "Any person who, without consent, impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or *bodily injury* of such person is guilty of strangulation, a Class 6 felony." Code § 18.2-51.6 (emphasis added).

Considering those precedents construing the same statutory phrase, we hold that the plain, obvious, and broad meaning of "bodily injury" in Code § 16.1-253.2(C) is any bodily damage, harm, hurt, or injury; or any impairment of a bodily function, mental faculty, or physical condition. Ricks, 290 Va. at 479; see Auer v. Commonwealth, 46 Va. App. 637, 645-47 (2005) (relying, in part, on definitions established in prior opinions to interpret a statute). The victim need not "experience any observable wounds, cuts, or breaking of the skin. Nor must she offer proof of 'broken bones or bruises.'" English, 58 Va. App. at 719 (quoting Luck, 32 Va. App. at 831-32). "[I]nternal injuries—no less than external injuries—fall within the scope" of bodily injuries. Id.

Nevertheless, not every unlawful or offensive touching that would be sufficient to convict a defendant of assault and battery constitutes a bodily injury. It is well-established that "[t]he touching necessary for a battery . . . need not include a physical injury." Kelley v. Commonwealth, 69 Va. App. 617, 625 (2019). Indeed, the text of Code § 16.1-253.2(C) explicitly contemplates that distinction. For a defendant who "commits an assault and battery upon a[] party protected by [a] protective order" is not guilty of a felony under Code § 16.1-253.2(C) unless the victim also suffers a "bodily injury."

Accordingly, we now turn to appellant's contention that the evidence was insufficient to demonstrate that L.M. actually suffered a bodily injury. Specifically, he argues that L.M. did not suffer any damage, harm, hurt, or impairment of a bodily function. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" Smith v. Commonwealth, 296 Va. 450, 460 (2018) (quoting Commonwealth v. Perkins, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Secret v. Commonwealth, 296 Va. 204,

228 (2018) (quoting Pijor v. Commonwealth, 294 Va. 502, 512 (2017)). Instead, we ask only "whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Pijor, 294 Va. at 512). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" Chavez v. Commonwealth, 69 Va. App. 149, 161 (2018) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)).

L.M. testified that appellant bit her on the leg or knee, "so" she screamed. Indeed, although appellant had forcibly entered L.M.'s house without permission and in violation of the protective order, she did not scream until after appellant had bitten her. Before the bite, she was "balled up" with her child in her arms. Thus, the trial court could reasonably infer from L.M.'s testimony and the timing of her scream that the scream evinced pain and hurt because of appellant's bite. See Luck, 32 Va. App. at 832 (affirming that two troopers had suffered bodily injuries in malicious wounding cases when they suffered "soft-tissue injuries that required medical treatment and caused pain").

Although the evidence did not demonstrate that appellant left bite marks on L.M., the Commonwealth was not required to prove that she suffered "any observable wounds, cuts, or breaking of the skin" to sustain a conviction. English, 58 Va. App. at 719. In addition, the record demonstrates that while reporting the incident to the police within a "few hours" of the offense, L.M. lifted her pantleg and allowed a police officer to photograph her knee, which had an area of discoloration. Although L.M. testified that the discoloration was caused by a skin condition, that testimony does not prohibit the trial court from reasonably inferring that L.M. allowed the officer to document the area of her body that appellant *hurt* when he had bitten her a few hours earlier.

Appellant's reliance on Chilton v. Commonwealth[4] is misplaced.  There, the Supreme Court concluded that the evidence failed to prove a bodily injury in a strangulation case.  Ricks, 290 Va. at 481.  The victim did not complain of injury, did not seek medical attention, did not suffer any physical impairment, and did not testify to any residual effects, including any loss of consciousness.  Id.  Instead, she merely testified that the defendant had touched "th[e] general area [of her throat]," but not in "a chocking motion"; she also "saw black" after she "closed [her] eyes."  Id.  Finding that the evidence was "so minimal that it failed to establish" a bodily injury, the Supreme Court reversed Chilton's conviction.  Id.

Here, the evidence, viewed in the light most favorable to the Commonwealth, demonstrated that L.M. screamed when appellant bit her, evidencing pain and hurt, and that L.M. allowed a police officer to document the location of that hurt within hours of the offense.  In short, unlike in Chilton, the facts in the instant case show a bodily injury occurred as a result of appellant's act of biting the victim in violation of Code § 16.1-253.2(C).  We affirm.

Affirmed.

---

[4] The Supreme Court consolidated Chilton v. Commonwealth with Ricks v. Commonwealth since both cases presented a similar issue on appeal.  Ricks, 290 Va. at 478-81.