PRESENT:  Lemons, C.J., Mims, McClanahan, Powell, Kelsey, and Roush, JJ., and Millette, S.J.

TALMAGE DONNELL RICKS

v.  Record No. 141650

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE CLEO E. POWELL
November 12, 2015

COMMONWEALTH OF VIRGINIA

v.  Record No. 141820

EDWARD CHILTON

FROM THE COURT OF APPEALS OF VIRGINIA

We consider these two appeals together because they present similar assignments of error regarding the wounding or bodily injury element necessary to prove the crime of strangulation in violation of Code § 18.2-51.6.  In each case, we consider whether the Court of Appeals erred in its findings regarding the sufficiency of the evidence to prove bodily injury.

I.  BACKGROUND

A.  Ricks

Talmage Donnell Ricks ("Ricks") was convicted by the Circuit Court of Southampton County ("Southampton Circuit Court") of strangulation resulting in bodily injury in violation of Code § 18.2-51.6.  At trial, the evidence showed that Ricks lived with his girlfriend, Nichole Hyman ("Hyman").  On May 11, 2013, Ricks returned home drunk after an altercation with a neighbor and awakened Hyman.  Ricks was angry and told Hyman that he was going to shoot someone.  Hyman asked him "to leave it alone, [and] to go to sleep."  Hyman testified that Ricks became angrier and hit her in the side with a belt while she was in bed.  Hyman tried to get out of bed, but Ricks got on top of her and held her neck down with one hand.  Hyman testified that she

could not breathe and that Ricks held her neck for approximately four seconds. Hyman kicked Ricks, he fell off the bed on to the floor, and she ran. Ricks caught Hyman near the bathroom door and again choked her. Hyman explained that Ricks had one hand over her neck, cutting off her breathing completely. Hyman testified she was able to get to the front door where Ricks choked her for a third time and said, "'B, I'm'a leave you for dead tonight.'" Hyman kicked Ricks and ran next door to call the police.

Hyman testified she did not yell for help because she did not have a voice and she could not talk when she went next door. Hyman testified her voice returned a "couple of days" later. Hyman testified she had bruises on her neck from the incident, but no permanent injuries and she did not seek medical attention. When Deputy Blythe arrived to investigate, he testified that he saw a faint red mark on Hyman's neck.

Ricks testified that he never choked Hyman and did not hit her with a belt. He admitted he hit Hyman with his forearm when she tried to prevent him from leaving. He testified Hyman told him she was leaving the house to "get some air."

At the conclusion of the evidence, the Southampton Circuit Court stated that Hyman's testimony was "very credible." The court found that Hyman's respiratory process was stopped by Ricks's hand and that she was unable to yell for help as a result of Ricks's actions. Finally, the court ruled that Hyman sustained a bodily injury due to the red mark on her neck and she testified that she had a bruise on her neck and was unable to speak the next day.

Ricks filed a petition for appeal with the Court of Appeals asserting the Southampton Circuit Court erred in finding him guilty of strangulation because the Commonwealth failed to prove Hyman suffered a "bodily injury" within the meaning of Code § 18.2-51.6. On October 15, 2014, the Court of Appeals denied the petition for appeal by per curiam order. See Ricks v.

Commonwealth, Record No. 0293-14-1 (Oct. 15, 2014) (unpublished).  The Court of Appeals

held,

> [i]n this case, Hyman testified [Ricks] held her neck with one
> hand, preventing her from breathing.  She kicked [Ricks] because
> she was unable to call for help.  As Hyman left the area, [Ricks]
> choked her.  After Hyman was able to leave her house to get help,
> she was unable to speak and she was unable to speak the following
> day.  Hyman testified she had a bruise on her neck.  From this
> evidence, a reasonable fact finder could conclude that [Ricks]
> applied pressure to Hyman's neck which impeded her respiration
> and/or blood flow and that the bruise on Hyman's neck and her
> inability to speak constituted bodily injury that resulted from
> [Ricks] applying pressure to her neck.  Dawson [v.
> Commonwealth], 63 Va. App. [429,] 437, 758 S.E.2d [94,] 98
> [(2014)].

Ricks, slip op. at 3.  We awarded Ricks this appeal.

## B.  Chilton

Edward Chilton ("Chilton") was convicted by the Circuit Court of the City of Lynchburg

("Lynchburg Circuit Court") of strangulation resulting in bodily injury in violation of Code

§ 18.2-51.6.  The evidence presented at trial showed that on October 23, 2012, Chilton went to

the home of his ex-girlfriend, Ebony Dickerson ("Dickerson").  At the end of the visit, the two

began to argue.  Chilton and Dickerson "pushed each other," then Chilton left.  Dickerson sat on

the sofa with her infant daughter and watched the television.  Less than ten minutes later,

Dickerson heard "[a] lot of commotion," that is, "screaming" and "hollering" outside her front

door.  Dickerson got up and looked out the window of her front door to see that it was Chilton,

visibly upset, kicking at her door.  Dickerson then opened the door and let him in.  Once inside,

Chilton continued in his rant and eventually pushed and hit Dickerson.

Dickerson testified that Chilton pushed her onto the couch.  Chilton and Dickerson

proceeded to hit each other, while Dickerson was trying to get Chilton off of her.  Dickerson

3

testified that Chilton was "holding [her] down and at one point, he may have grabbed around [her] throat briefly." The questioning proceeded as follows:

> [Prosecutor:] As he grabbed you around your throat, did you ever lose consciousness? Did you ever black out?
>
> [Dickerson:] I saw black but it wasn't like I completely and totally lost conscious [sic].
>
> [Prosecutor:] Okay. So when you say you saw black, were your eyes open?
>
> [Dickerson:] I closed my eyes.
>
> [Prosecutor:] Okay.
>
> [Dickerson:] And when I opened my eyes, he was still there but he wasn't causing any harm to me then.

On cross-examination of Dickerson, the following exchange occurred:

> [Defense Counsel:] And did his hands actually go around your throat or was he just lying on you? Is that what caused you to close your eyes?
>
> [Dickerson:] He was in that general area.
>
> [Defense Counsel:] But you can't say he actually put his hands around your throat?
>
> . . . .
>
> [Dickerson:] It wasn't a choking motion.

The evidence at trial was that, after the altercation described above, Chilton then got up and left on his own accord. Dickerson said that she did not require any medical attention following the altercation and did not complain of any injury. Officer A.J. Johnson testified that he took photos of Dickerson's neck, but did not notice any bruising or other injury.

4

The Lynchburg Circuit Court found the victim credible, noting, "I observed the witnesses on the stand and I found . . . Ms. Dickerson credible [and] that there was a personal injury[,] and I find the Commonwealth proved all the elements of that charge beyond a reasonable doubt." Defense counsel noted his objection to the ruling, and Chilton was convicted of strangulation pursuant to Code § 18.2-51.6.

Chilton filed an appeal with the Court of Appeals asserting that the Lynchburg Circuit Court erred in finding that the evidence sufficiently showed Dickerson suffered a bodily injury. Relying on its previous decisions in Dawson; English v. Commonwealth, 58 Va. App. 711, 715 S.E.2d 391 (2011); Luck v. Commonwealth, 32 Va. App. 827, 531 S.E.2d 41 (2000); and Campbell v. Commonwealth, 12 Va. App. 476, 405 S.E.2d 1 (1991) (en banc), the Court of Appeals reversed Chilton's conviction in an unpublished opinion, Chilton v. Commonwealth, Record No. 1531-13-3, 2014 Va. App. LEXIS 379 (Nov. 18, 2014) (unpublished). We awarded the Commonwealth this appeal.

## II. DISCUSSION

### A. Bodily Injury

We have not previously construed the term "bodily injury" in the context of the strangulation statute. To that extent, these cases present an issue of first impression for the Court.

Code § 18.2-51.6, enacted in 2012, provides: "Any person who, without consent, impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person is guilty of strangulation, a Class 6 felony."

> [U]nder basic rules of statutory construction, we determine the
> General Assembly's intent from the words contained in the statute.

5

When the language of a statute is unambiguous, courts are bound by the plain meaning of that language and may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated.

Elliott v. Commonwealth, 277 Va. 457, 463, 675 S.E.2d 178, 182 (2009) (citation omitted). "Furthermore, '[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction,' and a statute should never be construed in a way that leads to absurd results." Meeks v. Commonwealth, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) (quoting Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998)).

"Bodily" is defined as "of or relating to the body." Webster's Third New International Dictionary 245 (1993). "Injury" is defined as "an act that damages, harms, or hurts." Id. at 1164. In interpreting the phrase "bodily injury" in the context of malicious wounding, Virginia courts have long applied the interpretation that "'[b]odily injury comprehends, it would seem, *any bodily hurt* whatsoever.'" Bryant v. Commonwealth, 189 Va. 310, 316, 53 S.E.2d 54, 57 (1949) (citation omitted) (defining "bodily injury" in the context of maiming under former Code § 4402, now malicious wounding under Code § 18.2-51).[1]

We find persuasive authority both from the Court of Appeals and other jurisdictions. The Court of Appeals has given "the phrase 'bodily injury' its 'everyday, ordinary meaning,' which

---

[1] "Under the rule of statutory construction of statutes *in pari materia*, statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great, connected homogeneous system, or a single and complete statutory arrangement." Lillard v. Fairfax County Airport Auth., 208 Va. 8, 13, 155 S.E.2d 338, 342 (1967) (citation and internal quotation marks omitted). "It is a common canon of statutory construction that when the legislature uses the same term in separate statutes, that term has the same meaning in each unless the General Assembly indicates to the contrary." Commonwealth v. Jackson, 276 Va. 184, 194, 661 S.E.2d 810, 815 (2008) (citing Virginia Elec. & Power Co. v. Board of Supervisors, 226 Va. 382, 387-88 309 S.E.2d 308, 311 (1983) (courts "interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal"); Prillaman v. Commonwealth, 199 Va. 401, 405, 100 S.E.2d 4, 7 (1957) ("[S]tatutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great connected, homogeneous system, or a single and complete statutory arrangement.")).

needs no technical, anatomical definition." English, 58 Va. App. at 718, 715 S.E.2d at 395 (quoting Luck, 32 Va. App. at 832, 531 S.E.2d at 43). "To prove a bodily injury, the victim need not experience any observable wounds, cuts, or breaking of the skin. Nor must she offer proof of 'broken bones or bruises.'" Id. at 719, 715 S.E.2d at 395 (quoting Luck, 32 Va. App at 831-32, 531 S.E.2d at 43). "[I]nternal injuries—no less than external injuries—fall within the scope of Code § 18.2-51." Id.

The United States Code defines "bodily injury" as "a cut, abrasion, bruise, burn, or disfigurement; physical pain; illness; impairment of the function of a bodily member, organ, or mental faculty; or any other injury to the body, no matter how temporary." 18 U.S.C. § 1515(a)(5)(A-E). Other states have broadly defined "bodily injury." Neb. Rev. Stat. § 28-109 (2015) ("physical pain, illness, or any impairment of physical condition"); Tenn. Code Ann. § 39-11-106(a)(2) ("a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty"); Wyo. Stat. Ann. § 6-1-104(a)(i) ("'Bodily injury' means: (A) A cut, abrasion, burn or temporary disfigurement; (B) Physical pain; or (C) Impairment of the function of a bodily member, organ or mental faculty.").

Finding the foregoing authorities persuasive, and in light of our broad definition of bodily injury when applying Code § 18.2-51, today we hold that "bodily injury" within the scope of Code § 18.2-51.6 is any bodily injury whatsoever and includes an act of damage or harm or hurt that relates to the body; is an impairment of a function of a bodily member, organ, or mental faculty; or is an act of impairment of a physical condition.

B.  Ricks

The evidence presented to the Southampton Circuit Court showed that Ricks held the victim down with his hand on her neck, that she was unable to yell and/or talk as a result of his actions, that the victim stated that she could not breathe when Ricks' hand was on her neck, and she had a red mark on her neck.

"The plain, obvious, and rational meaning" of bodily injury is much broader than that asserted by Ricks.  Meeks, 274 Va. at 802, 651 S.E.2d at 639 (quoting Zamani, 256 Va. at 395, 507 S.E.2d at 609).  Construing "bodily injury" more narrowly would lead to "absurd results."  Id.  "To prove a bodily injury, the victim need not experience any observable wounds, cuts, or breaking of the skin.  Nor must she offer proof of 'broken bones or bruises.'"  English, 58 Va. App. at 719, 715 S.E.2d at 395 (quoting Luck, 32 Va. App at 831-32, 531 S.E.2d at 43).  Based on the facts presented to the Southampton Circuit Court, the evidence was sufficient to prove strangulation resulting in bodily injury.  See Elliott, 277 Va. at 462, 675 S.E.2d at 181 ("The credibility of witnesses and the weight accorded the evidence are matters solely for the fact finder.").  The Court of Appeals did not err in refusing Ricks' petition for appeal, nor did the Southampton Circuit Court err in finding Ricks guilty of violating Code § 18.2-51.6.

C.  Chilton

In its appeal of the Court of Appeals' disposition in Chilton, the Commonwealth specifically places the issue before us of whether a loss of consciousness alone constitutes bodily injury under Code § 18.2-51.6.[2]  "Conscious" is defined as "mentally active; fully possessed of one's mental faculties; having emerged from sleep, faint, or stupor."  Webster's Third New International Dictionary 482.  In light of our earlier discussion of bodily injury, we hold that

---

[2] The Commonwealth's second assignment of error reads: "The Court of Appeals erred in finding there was no bodily injury where the victim was choked until she was unconscious."

8

intentionally impeding the flow of oxygen to another person resulting in unconsciousness, however brief, does constitute a bodily injury within the meaning of Code § 18.2-51.6. Even a "momentary 'black out'" caused by pressure to the neck is sufficient to constitute a bodily injury.[3] The Commonwealth need not present medical testimony to prove bodily injury resulting from strangulation; however, if the Commonwealth presents evidence sufficient to prove that unlawful pressure to the neck was applied to a victim and that such unlawful pressure resulted in unconsciousness, that is sufficient to prove the element of bodily injury.

In addressing the issue of unconsciousness, the Court of Appeals held that

> even if [Dickerson] suffered a momentary "black out," there was no evidence, medical or otherwise, that she suffered any physical or mental impairment as a result. Simply put, by failing to establish any observable external injuries, particularly in light of the victim's lack of complaint of injury, and without any evidence, medical or otherwise, of any internal or soft tissue injuries, the Commonwealth failed to establish that the application of pressure to the neck of the victim resulted in bodily injury.

Chilton, 2014 Va. App. LEXIS 379, at *10. While we do not agree with the Court of Appeals' *rationale* in reversing Chilton's conviction, we do agree that the evidence was insufficient to prove Dickerson suffered a bodily injury. See Perry v. Commonwealth, 280 Va. 572, 579, 701 S.E.2d 431, 435 (2010) (citing Whitehead v. Commonwealth, 278 Va. 105, 115, 677 S.E.2d 265, 270 (2009)) ("In Whitehead, we properly embraced the correct focus of the right result for the wrong reason doctrine when we stated that cases are only proper for application of the right result for the wrong reason doctrine when the evidence in the record supports the new argument

---

[3] Other states have also concluded that being rendered unconscious constitutes a bodily injury. See, e.g., State v. Atkinson, 741 A.2d 991, 1001-02 (Conn. Super. Ct. 1999) ("It may be inferred that a loss of consciousness has been caused by a serious impairment of a bodily organ, through an impairment of the function of the brain, known by common experience to be an organ of the body requiring the use of oxygen to sustain its operation and activity . . . . a loss of consciousness, however brief, may constitute a serious physical injury under [the state penal code].").

on appeal, and the development of additional facts is not necessary.").  Here, Dickerson never clearly testified that Chilton actually applied pressure to her neck.  In fact, she testified that, "He was in th[e] general area [of her throat]" but that "[i]t wasn't a choking motion."  She also testified that she "saw black" after she "closed [her] eyes."  Moreover, she testified that she never completely and totally lost consciousness.  The Commonwealth's evidence was so minimal that it failed to establish that Dickerson suffered a bodily injury in the form of a loss of consciousness.

Accordingly, for the reasons stated, we hold that the Court of Appeals did not err in reversing Chilton's conviction and dismissing the indictment against him.

### III.  CONCLUSION

For the reasons stated, we will affirm the judgment of the Court of Appeals upholding the conviction of Ricks in the Southampton Circuit Court.  We will also affirm the Court of Appeals' judgment in Chilton reversing that defendant's conviction in the Lynchburg Circuit Court and dismissing the indictment against him.

Record No. 141650 – Affirmed.

Record No. 141820 – Affirmed.

10