COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, O'Brien and Fulton
Argued by videoconference


JEREMY WAYNE DODGE

MEMORANDUM OPINION[*] BY
v.        Record No. 0577-21-2        JUDGE MARY GRACE O'BRIEN
FEBRUARY 22, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HANOVER COUNTY
Patricia Kelly, Judge

Barbara Earp (McCaul Martin Evans and Cook, on brief), for
appellant.

Sharon M. Carr, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellee.


Following a bench trial, Jeremy Wayne Dodge ("appellant") was convicted of one count of

strangulation, in violation of Code § 18.2-51.6.[2]  Appellant contends the court erred by finding the

evidence sufficient to prove "bodily injury," as required by statute.  For the following reasons, we

affirm his conviction.

BACKGROUND

On appeal, "[i]n accordance with familiar principles of appellate review, the facts will be

stated in the light most favorable to the Commonwealth, the prevailing party at trial."  *Gerald v.*

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

[2] Appellant was also convicted of two counts of assault and battery of a family member,
in violation of Code § 18.2-57.2.  Those convictions are not at issue in this appeal.

(2016)). "That principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (*en banc*) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (*en banc*)).

So viewed, the evidence established that at 11:00 p.m. on January 19, 2020, appellant arrived home with his friend Michael Anderson. Appellant's wife, Melissa, was asleep in their bedroom. Appellant woke Melissa when he entered the bedroom, yelling about money he believed was missing. He "jerked" his wife up by one arm and threw her against a wall. When she fell to the ground, appellant knelt on her stomach, causing her severe pain because she was recovering from surgery. Melissa repeatedly stated, "[M]y stomach, my stomach, it hurts, please get off of me."

Appellant continued arguing with his wife and began "ripping the room apart," looking for his money. At one point, appellant grabbed Melissa by her neck and threw her onto the bed. Melissa got up and swung at appellant, but appellant grabbed her arms and her neck. Melissa testified at trial that appellant had one hand around her neck to restrain her and she "was having difficulty" breathing as he applied pressure, although she did not lose consciousness. When asked whether the pressure to her neck made it difficult to "breathe or speak," Melissa replied, "Yes."

Anderson recorded the first four minutes of the altercation, and the video was admitted into evidence. The video corroborated Melissa's testimony and showed appellant slapping Melissa across the face and putting both hands around her neck. Melissa testified that, after the recording stopped, appellant "was still looking for money" and "[c]ontinued destroying the house and putting his hands on [her] in an aggressive manner." Specifically, appellant was "[p]ushing [her] around, grabbing [her] by [her] neck[,] and throwing [her] back on the bed." Appellant put his hands around her neck "[m]aybe six [or] seven times."

- 2 -

Melissa sustained numerous injuries from appellant's attack, including an injury to her lip and bruising on her "[a]rm, legs, abdomen." She also had red marks on her neck where appellant grabbed her. The marks on her neck, however, "did not remain. . . . [T]hey didn't bruise like the rest of [her] body did." Melissa admitted that she previously testified in a bond hearing that the marks on her neck resulted from a consensual sexual encounter, but she explained that she had lied at appellant's request so that he would be released from jail.

Hanover County Sheriff's Deputy Nicholas Albano responded to the home on the night of the offense and photographed Melissa's injuries. He testified that he

> saw . . . redness on her neck. There was a bump on the back of her head which I attempted to photograph[,] but it was covered by hair so you couldn't really see it. She had a fat, busted lip that looked like it had been punched. She also had several black and blue marks on both of her arms and on the sides of her knees.

When shown pictures that he took of Melissa's injuries, the deputy testified that the pictures did not fully capture the extent of the injuries on Melissa's neck. He explained, "The redness really doesn't show very well. The black and blue [do] not really [show] that well either, but there were definite noticeable marks that may not appear the same way in the photos as they did to my naked eye." When Deputy Albano saw Melissa two days later, the redness on Melissa's neck "had pretty much disappeared." Deputy Albano's pictures were admitted into evidence.

At the conclusion of the Commonwealth's case, appellant moved to strike the strangulation charge, specifically arguing that "[w]e don't have any evidence from a forensic examiner. . . . All we have is some pictures that show, best I could tell[,] is a red mark on the side of someone's neck." The court denied the motion. At the conclusion of the evidence, appellant renewed his motion, arguing the evidence failed to prove that he "specifically intended to stop the blood or air circulation[,] or did[,] and that that in and of itself cause[d] any of the wounding." The trial court found appellant guilty of strangulation.

Appellant subsequently moved to reconsider the verdict. He argued that the evidence was insufficient to prove he impeded Melissa's respiratory or circulatory functions, as there was "no evidence of her having gone unconscious, blacking out, an inability to talk, nothing, just that it was more difficult to breathe," and "there is a difference between impeding and making it more difficult." Appellant also argued there was insufficient proof of any injury resulting from the application of pressure to Melissa's neck, because "there is nothing to establish" that the mark to her neck "wasn't a result of any of the remainder of the scuffle." The court denied appellant's motion and sentenced him to five years in prison, with three years and nine months suspended.

ANALYSIS

Appellant challenges the sufficiency of the evidence to convict him of strangulation. "When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)). "An appellate court does not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Williams v. Commonwealth*, 278 Va. 190, 193 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). Instead, the "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010); *see Jackson*, 443 U.S. at 319.

Appellant contends that the evidence was insufficient to prove strangulation for two reasons. First, he argues that Melissa's testimony shows his actions only made it more difficult to breathe and did not fully impede her respiration. Second, he contends that Melissa did not specify "which of the six or seven times she was grabbed by the neck" actually "caused the marks" to her neck. Appellant concludes the evidence failed to establish "that a bodily injury occurred as a result of [appellant's] actions of impeding the victim's blood circulation or respiration by intentionally applying pressure to the victim's neck."

Code § 18.2-51.6 provides that "[a]ny person who, without consent, impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person is guilty of strangulation, a Class 6 felony." Stated otherwise, the Commonwealth must prove that the victim's blood circulation or respiration was impeded by the intentional application of pressure to the victim's neck, resulting in bodily injury.

When a term such as "impede" is not statutorily defined, we give it its "everyday, ordinary meaning." *Stein v. Commonwealth*, 12 Va. App. 65, 69 (1991) (considering dictionary definitions to ascertain ordinary meaning). "Impede" is defined as "to interfere with or get in the way of the progress of." *Webster's Third New International Dictionary* 1132 (2002). It also means to "hold up," "block," and "detract from." *Id.* Thus, contrary to appellant's assertion, the statute does not require the Commonwealth to prove that the victim's ability to breathe or speak was completely restricted. Rather, pursuant to the ordinary meaning of "impede," the evidence must show that appellant's actions merely interfered with her ability to breathe or obstructed her breathing. Here, Melissa's testimony that she had difficulty breathing and speaking when appellant applied pressure to her neck satisfies this element of the offense.

The term "bodily injury" is also not defined by statute. The Virginia Supreme Court, however, has held that "'bodily injury' within the scope of Code § 18.2-51.6 is any bodily injury whatsoever and includes an act of damage or harm or hurt that relates to the body; is an impairment of a function of a bodily member, organ, or mental faculty; or is an act of impairment of a physical condition." *Ricks v. Commonwealth*, 290 Va. 470, 479 (2015). "[I]nternal injuries—no less than external injuries—fall within the scope of" this broad definition. *Id.* at 478 (alteration in original) (quoting *English v. Commonwealth*, 58 Va. App. 711, 719 (2011) (construing "bodily injury" in the context of the malicious wounding statute)). That is, "[t]o prove a bodily injury, the victim need not experience any observable wounds, cuts, or breaking of the skin. Nor must she offer proof of 'broken bones or bruises.'" *Id.* at 479 (quoting *English*, 58 Va. App. at 719). Bodily injury "includes *any* 'detriment, hurt, loss, [or] impairment' that could fairly be considered an injury to the human body." *English*, 58 Va. App. at 718-19 (emphasis added) (quoting *Johnson v. Commonwealth*, 184 Va. 409, 416 (1945)). *See also Wandemberg v. Commonwealth*, 70 Va. App. 124, 136 (2019) (affirming conviction when victim did not lose consciousness but testified that her "face and lips went numb" and her neck "hurt and was red after the strangulation").

In *Ricks*, the defendant returned home drunk, woke the victim, and started an argument. *Ricks*, 290 Va. at 473. During the argument, the defendant "got on top of [the victim] and held her neck down with one hand." *Id.* The victim testified that the defendant held her neck for approximately four seconds and she could not breathe. *Id.* The defendant choked her a second time, and during that incident he had one hand over her neck, "cutting off her breathing completely." *Id.* He then choked the victim a third time and told her he was "leav[ing] you for dead tonight." *Id.* The victim testified that she had bruises on her neck from the incident, but no permanent injuries, and she did not seek medical attention. *Id.* at 474. A deputy who responded to the scene that night observed "a faint red mark" on her neck. *Id.*

- 6 -

Ricks appealed his strangulation conviction and contended that the Commonwealth "failed to prove [the victim] suffered a 'bodily injury' within the meaning of Code § 18.2-51.6." *Id.* The Supreme Court disagreed, stating that

> [t]he evidence presented [at trial] showed that [the defendant] held the victim down with his hand on her neck, that she was unable to yell and/or talk as a result of his actions, that the victim stated that she could not breathe when [the defendant's] hand was on her neck, and she had a red mark on her neck.

*Id.* at 479. "Construing 'bodily injury' more narrowly would lead to 'absurd results.'" *Id.* (quoting *Meeks v. Commonwealth*, 274 Va. 798, 802 (2007)).

The facts in the instant case are similar. Here, appellant arrived home and immediately began an argument with his wife, who had been asleep. During that argument, appellant became increasingly violent. Appellant put his hand around Melissa's neck and applied enough pressure to impede her ability to breathe or speak. As in *Ricks*, appellant repeatedly put his hands around Melissa's neck, leaving a visible red mark on her neck. *Cf. id.* The court could reasonably infer that the red marks on Melissa's neck resulted directly from appellant applying enough pressure to her neck to impede her breathing. *See Pease v. Commonwealth*, 39 Va. App. 342, 355 (2002) (*en banc*) ("The trier of fact has the responsibility . . . 'to draw reasonable inferences from basic facts to ultimate facts.'" (quoting *Jackson*, 443 U.S. at 319)), *aff'd*, 266 Va. 397 (2003) (*per curiam*).

In conclusion, we hold that the court did not err in finding sufficient evidence that appellant impeded the victim's respiration by knowingly, intentionally, and unlawfully applying pressure to her neck and that his actions resulted in bodily injury, in violation of Code § 18.2-51.6. The court's judgment was not plainly wrong or without evidence to support it. Accordingly, we affirm the conviction.

*Affirmed.*