COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, O'Brien and AtLee
Argued at Lexington, Virginia


RUANTA DEANGELAO PRICE
                                              MEMORANDUM OPINION[*] BY
v.        Record No. 0985-22-3                JUDGE RICHARD Y. ATLEE, JR.
                                                   NOVEMBER 21, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
Joseph W. Milam, Jr., Judge

Brett P. Blobaum, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court for the City of Danville convicted appellant

Ruanta Deangelao Price of strangulation, in violation of Code § 18.2-51.6.[1]  He received a sentence

of five years' imprisonment, with three years suspended and one year and six months of supervised

release.  On appeal, Price argues that the evidence was insufficient to support his conviction.  For

the following reasons, we affirm.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] The court acquitted Price of brandishing a firearm, possessing a firearm after having
been convicted of a nonviolent felony, and two counts of assault and battery, stemming from
incidents on another date.

I. BACKGROUND[2]

Kristy Custer began dating Price in November 2021. On January 22, 2022, they were together at her apartment when Price became angry because Custer had disabled the text message notifications on her phone. They had previously fought over messages other men had sent to Custer. Price accused Custer of "being sneaky" and "up to no good." Although Custer showed Price the messages on her phone, he seized it and threw it across the room. An argument ensued. During this argument, Price pushed Custer onto her bed, placed his hands around her throat, and squeezed with "medium pressure." Custer did not "remember breathing," testifying that "[i]t only lasted a few seconds, I'm sure. But it felt like . . . it felt like a long time."

Price released Custer but then pushed her back onto the bed and again squeezed her neck, this time with "[d]efinitely more than medium" pressure. She explained that "[t]his time it was more, it was harder to breathe. [A]nd I felt like I was getting ready to pass out." Custer repeated that it was difficult to breathe; her "airway was closing up," and she "felt like [she] was gonna pass out and throw up." She further testified that she was unable to stand after Price released his grip on her neck: "I felt like I was, like, my legs were weak. Like I had no control over [th]em. I was falling pretty much, and [Price] made a comment about me not being able to stand up, falling around." Custer "was having a hard time trying to catch [her] breath to breathe." Price continued to press Custer about the messages on her phone while scrolling through the contents and sending messages, pretending to be her, in an attempt to prove that she was being unfaithful.

---

[2] "Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Meanwhile, Custer's coworker, Lisa Pearman, had been trying to contact her. Growing worried, she asked police to perform a welfare check on Custer. When the responding officer spoke with Custer at her residence, she told him that she was "okay," but "just hadn't felt that well that day." Custer testified that Price asked about the officer after he left, describing Price as "nervous." Pearman arrived at Custer's home a short time later and asked Custer if she was okay; Custer "shook [her] head, yes," but "really didn't say yes or no," but "made eye reactions . . . , just kind of blinked her eyes."

Custer testified that she was winking and blinking her eyes "trying to give [Pearman] a signal," and told Pearman that she was not alone. Pearman invited Custer to lunch, and Custer accepted. Pearman noticed that Custer was "very distressed and upset." Custer said she needed to go get dressed, and Pearman said that if Custer was not out of the apartment in ten minutes, Pearman would call police again. Price left the house in a separate vehicle when Custer left with Pearman.

At lunch, Custer told Pearman about Price's attack. Pearman noticed that Custer had bruises and marks on her neck and arms and that the neck marks were "fresh." Pearman asked Custer if she wanted to leave the apartment, but Custer declined and returned there after lunch. Custer went to the hospital the next day where she reported the attack.

While Custer was at the hospital, Courtney Moss, a forensic nurse, performed an examination on her and later testified as an expert at Price's trial. At trial, the Commonwealth introduced several photographs of Custer's injuries, taken during Moss's examination and in the days immediately following the assault. Moss observed three marks on Custer's head and neck, two on her chest, six on her arms, eight on her left leg, and seven on her right leg. Moss recounted Custer's report of the January 22 attack, given at the exam, stating that Custer reported she had difficulty breathing, nausea, and feelings of faintness. Moss opined that Custer's faintness, nausea,

and "weakness or numbness" in the arms and legs were consistent with carotid artery and jugular vein compression and that Custer's trouble breathing was consistent with tracheal compression. Moss measured Custer's neck during the initial examination and then again at a follow-up visit on February 9, 2022; the results indicated that Custer's neck had been swollen on January 23, which Moss described as "consistent with pressure being applied and causing injury or trauma to those tissues."

Custer testified that she did not speak with Price for several days after January 22. When Price texted her, they discussed koala bears and her joking that she'd like to have one as a pet. In the text exchange, Custer said she was "[j]ust dreaming," and Price responded, "[y]eah you do that a lot that's why I almost killed you." Custer reported the attack to police on February 9, 2022, after her follow-up visit with Moss. At trial, she explained her delay in reporting, saying that she "kept going back and forth in [her] mind if [she] wanted to go through with it or not." She decided to make the report after learning that her neck had been swollen on her initial visit after the strangulation incident.

Price testified that he broke up with Custer on February 4, 2022. Price denied sending the text stating that he had almost killed Custer and claimed that Custer was attacking *him* during the January 22 altercation, when he had to "pry" her off him.

The circuit court convicted Price of strangulation, for which he received a sentence of five years' imprisonment, with three years suspended and one year and six months of supervised release. This appeal followed.

II. ANALYSIS

Price argues that Custer's testimony was inherently incredible, and therefore the evidence was insufficient to convict him of strangulation. We disagree.

A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"Determining the credibility of witnesses . . . is within the exclusive province of the [factfinder], which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (first alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "This Court must 'accept the trial court's determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Commonwealth v. Perkins*, 295 Va. 323, 328 (2018) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). "Witness testimony will not be

found inherently incredible 'unless it is "so manifestly false that reasonable men ought not to believe it" or "shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ."'" *Hammer v. Commonwealth*, 74 Va. App. 225, 239-40 (2022) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018)).

### B. *The evidence was sufficient to convict Price of strangulation*

"Any person who, without consent, impedes the blood circulation or respiration of another person by knowingly, intentionally, and unlawfully applying pressure to the neck of such person resulting in the wounding or bodily injury of such person is guilty of strangulation, a Class 6 felony." Code § 18.2-51.6(A). To secure a conviction for strangulation, the Commonwealth must prove that the act caused a bodily injury consisting of "damage or harm or hurt that relates to the body"; an "impairment of a function of a bodily member, organ, or mental faculty"; or "impairment of a physical condition." *Ricks v. Commonwealth*, 290 Va. 470, 479 (2015). Bodily injury need not include "any observable wounds, cuts, or breaking of the skin" or "proof of 'broken bones or bruises.'" *Id.* (quoting *English v. Commonwealth*, 58 Va. App. 711, 719 (2011)). "[I]nternal injuries—no less than external injuries—fall within the scope of Code § 18.2-51." *Id.* (alteration in original) (quoting *English*, 58 Va. App. at 719). The element of bodily injury may be proven by any injury, "no matter how temporary," including rendering the victim unconscious. *Id.* at 478, 480 (quoting 18 U.S.C. § 1515(a)(5)(E)).

Price asserts that the Commonwealth's evidence was insufficient to sustain the strangulation conviction because Custer was "inherently incredible as a matter of law" and that the court therefore erred in denying his motion to strike. In support of this argument, Price points to Custer's statement to the officer conducting the welfare check on the day of the incident that she was "okay" and just not feeling well that morning. He further notes her decision to have lunch with a friend shortly after the attack and her continued contact with him. Also weighing against Custer's credibility, in Price's

estimation, was her delay in reporting the incident to law enforcement "for over two weeks." Price characterizes this behavior as "contrary to human experience." "Without the inherently incredible testimony," he tells us, the "evidence was insufficient to prove the elements of strangulation." We disagree.

"Potential inconsistencies in testimony are resolved by the fact finder. We do not revisit such conflicts on appeal 'unless "the evidence is such that reasonable [persons], after weighing the evidence and drawing all just inferences therefrom, could reach but one conclusion."'" *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011) (alteration in original) (quoting *Molina v. Commonwealth*, 47 Va. App. 338, 369, *aff'd*, 272 Va. 666 (2006)). Neither the delay in reporting knowledge of a crime nor the mere fact that a witness has been impeached renders the witness's testimony inherently incredible. *See Juniper v. Commonwealth*, 271 Va. 362, 415 (2006) ("The mere fact that a witness may have delayed in reporting knowledge of a case . . . does not necessarily render the testimony unworthy of belief."); *Ray v. Commonwealth*, 74 Va. App. 291, 306 (2022) (holding that "the mere fact that a witness'[s] testimony may have been impeached does not necessarily render the testimony inherently incredible"). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald*, 295 Va. at 487 (quoting *Juniper*, 271 Va. at 415).

Whatever "incongruities" Price finds in her testimony, Custer's account of the strangulation itself was consistent. Moreover, Pearman testified that Custer was "distressed and upset" on the day of the attack. She also noticed "fresh" marks on Custer's neck. Moss, a qualified forensic nurse with experience evaluating strangulation cases, noted three marks on Custer's head and neck, along with other injuries. Moss opined that Custer's reported symptoms were consistent with compression of the carotid artery, jugular vein, and trachea. Moss also found that Custer had

suffered swelling in her neck, which was "consistent with pressure being applied and causing trauma or injury to those tissues." In short, the physical evidence was consistent with Custer's account of the attack.

We acknowledge, as the circuit court did, that there were "some interesting incongruities in the evidence and the actions of the individuals involved" because "sometimes people who are in an emotional state do not act in a logical or rational way." But any contradictions in a witness's testimony goes to the credibility and the weight of that testimony. *Simpson v. Commonwealth*, 199 Va. 549, 557 (1957). It is not, as Price argues, "contrary to human experience" that a domestic violence victim might be hesitant to report an attack when the assailant is physically in her presence, or that there may be many other reasons to be reluctant to report the crimes of her romantic partner. Because there is nothing in this record to suggest that Custer was inherently incredible, it was up to the circuit court, sitting as factfinder, to judge Custer's credibility. "When the law says that it is for the [factfinder] to judge of the credibility of a witness, it is not a matter of degree." *Sidya v. World Telecom Exch. Commc'ns, LLC*, 301 Va. 31, 37 (2022) (quoting *Simpson*, 199 Va. at 557). According the proper deference to the factfinder's evaluation of Custer's credibility, and noting the overwhelming consistencies between the physical evidence and Custer's account of the attack, the circuit court did not err in concluding that the evidence was sufficient to prove that Price was guilty of strangulation.

### III. CONCLUSION

The circuit court did not err in finding the evidence sufficient to support Price's conviction for strangulation. Accordingly, we affirm.

*Affirmed.*