UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Athey, White and Frucci


PERCELL JAMES PARRISH

v.      Record No. 2008-23-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
OCTOBER 1, 2024


FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
Carson E. Saunders, Jr., Judge

(Terry Driskill; Terry Driskill Law, on brief), for appellant.
Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Angelique Rogers, Assistant
Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of the City of Hopewell ("trial court")

convicted Percell James Parrish ("Parrish") of malicious wounding and abduction.[1]  By final

order entered September 26, 2023, the trial court sentenced him to a total of 55 years'

imprisonment with 44 years suspended.  On appeal, Parrish challenges the sufficiency of the

evidence for the malicious wounding conviction.  After examining the briefs and record in this

case, the panel unanimously holds that oral argument is unnecessary because "the dispositive

issue . . . ha[s] been authoritatively decided, and the appellant has not argued that the case law

should be overturned, extended, modified, or reversed."  Code § 17.1-403(ii)(b); Rule 5A:27(b).

For the following reasons, we affirm.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Parrish also pleaded guilty to grand larceny of a vehicle and strangulation.  He does not
challenge on appeal the convictions for abduction, grand larceny of a vehicle, or strangulation.

## I. BACKGROUND[2]

In June 2022, Parrish and Vickie Mayberry ("Mayberry") were engaged in a romantic relationship while sharing a residence in Hopewell. During the early morning hours of June 13, 2022, Mayberry left their residence to buy cigarettes. When she returned, Parrish was standing in the doorway between their kitchen and the hallway with a "real mean look on his face." Parrish then asked her, "what the fuck you think you're doing."

Parrish then "lunged" at Mayberry. In response, she retreated to a chair on the other side of their kitchen table. Mayberry testified that next he got "in my face" and screamed: "I will kill you bitch." She testified that Parrish then pushed her against the wall, put his hands around her neck, and began squeezing. Mayberry also testified that Parrish grabbed a butcher knife from the counter and "tapped" her on the chest with the tip while threatening to kill her.

For the next several hours, ending at approximately 4:00 a.m., Parrish continued "tormenting" and "choking" Mayberry in their kitchen. Every time she attempted to leave, Parrish prevented her from reaching the front door. At some point, when Parrish walked toward the hallway to use the restroom, she ran for the door. He grabbed her, forced her back into the chair, and held the knife to her throat. She testified that he "kept pushing" the knife into her throat until he "drew blood." Parrish told Mayberry that she "was going to die" and that she would not "make it out the door."

Mayberry eventually escaped through the front door, but Parrish caught up to her on the outdoor concrete patio. He began choking her again until she saw "spots" and passed out. When

---

[2] On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

she "came to," she was lying face down with Parrish on top of her. After unsuccessfully trying to "buck" him off, Mayberry testified that she then told Parrish she needed to use the bathroom. When Parrish opened the front door, Mayberry instead ran from the patio and hid behind her vehicle parked near the residence.

Parrish retrieved the butcher knife and chased Mayberry around the vehicle. She ran to the neighbors' residence, yelled for them to call the police, and waited inside with them until officers arrived. In the meantime, Parrish drove away in Mayberry's vehicle.

After police officers responded to the scene, Mayberry was transported to the police station where she obtained a protective order. Sergeant Kate Williamson ("Sergeant Williamson") testified that she interviewed Mayberry and photographed the injuries on her body. Sergeant Williamson observed "slice marks" and "some pricks" on Mayberry's neck that appeared to be caused by a sharp knife. Additionally, Sergeant Williamson observed "various bruises" on Mayberry's arms.

Forensic nurse Kendall Plummer ("Plummer") also testified that she had examined Mayberry at the hospital later that day. In her report, Plummer noted multiple superficial skin breaks on Mayberry's neck and multiple bruises on her arms and legs. After Parrish was arrested in this case, he called Mayberry from jail. He said that he "was sorry" and did not "know what happened" because he "blacked out."

The Commonwealth charged Parrish with grand larceny of a vehicle, abduction, strangulation, and malicious wounding. On the day of trial, Parrish pled guilty to grand larceny of a vehicle and strangulation and not guilty to abduction and malicious wounding. In her testimony, Mayberry stated that during the altercation, Parrish accused her of "messing around on him." She confirmed that "the straight red lines on [her] neck" shown in the photographs "came from the knife." She further averred that Parrish "broke the skin" and there was "some blood."

Officer Yates testified that when he interviewed Parrish on June 15, 2022, Parrish stated that he "fucked up" and would "turn back the hands of time" if he could. Parrish also told Sergeant Kyle Nichols that he and Mayberry had an argument that became a "physical altercation." He admitted holding a knife but denied cutting Mayberry. Parrish claimed that he and Mayberry got in a "tussling match" and he had placed her in a "headlock."

At the conclusion of the Commonwealth's evidence, Parrish moved to strike the evidence of malicious wounding, contending that the cuts on Mayberry's neck were merely "superficial" wounds and thus insufficient to support a conviction for malicious wounding. The trial court concluded that, viewed in the light most favorable to the Commonwealth, the evidence showed that Parrish held a knife to Mayberry's throat, threatened to kill her, and cut her neck, leaving visible nicks and slice marks. Accordingly, the trial court denied the motion to strike.

Parrish testified on his own behalf that, on the night in question, he and Mayberry had a "little verbal argument" regarding what he alleged was her drug use. He "put [his] hands on her" and grabbed her neck to "hold her in place," but did not squeeze or apply pressure. According to Parrish, Mayberry grabbed the butcher knife from the counter and he took it from her. He also claimed that "the blood" came from a cut on his hand, and Parrish denied preventing Mayberry from leaving the residence. On cross-examination, he admitted putting the knife to Mayberry's throat but denied cutting her. Parrish's mother testified that Mayberry later told her that she cut herself with the knife.

At the conclusion of all the evidence, Parrish renewed his motion to strike the malicious wounding charge stating "[t]here just [wa]sn't enough of a wound to support" a conviction for malicious wounding. The trial court credited Mayberry's testimony that Parrish held a butcher knife to her throat and cut her with it, drawing blood. The trial court also cited Sergeant Williamson's testimony, Plummer's report, and the photographs for further support that the evidence in support of

- 4 -

the malicious wounding charge was sufficient. The trial court stated that having "found that there was a wounding that led to [Mayberry] bleeding," Parrish was convicted of "unlawfully, feloniously, and maliciously . . . caus[ing] bodily injury to" her "with intent to maim, disfigure, disable or kill." Parrish appealed.

## II. ANALYSIS

### A. *Standard of Review*

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### B. *The evidence was sufficient to prove Parrish maliciously wounded Mayberry.*

Parrish contends, on appeal, that the trial court erred by denying his motion to strike the malicious wounding charge. For the following reasons, we disagree.

"The malicious wounding statute states in relevant part that it is a crime to 'maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to

maim, disfigure, disable, or kill[.]'"[3] *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) (alteration in original) (quoting Code § 18.2-51).  The Supreme Court of Virginia has defined "bodily injury," as used in the malicious wounding statute, broadly "to include *any* bodily injury."  *English v. Commonwealth*, 58 Va. App. 711, 718 (2011) (quoting *Campbell v. Commonwealth*, 12 Va. App. 476, 483 (1991) (en banc)).  "To prove a bodily injury, the victim need not experience any observable wounds, cuts, or breaking of the skin.  Nor must she offer proof of 'broken bones or bruises.'"  *Ricks v. Commonwealth*, 290 Va. 470, 479 (2015) (quoting *English*, 58 Va. App. at 719).  Rather, bodily injury "includes an act of damage or harm or hurt that relates to the body; is an impairment of a function of a bodily member, organ, or mental faculty; or is an act of impairment of a physical condition."  *Wandemberg v. Commonwealth*, 70 Va. App. 124, 133 (2019) (quoting *Ricks*, 290 Va. at 479).

We find no error in the trial court's conclusion that Parrish caused Mayberry bodily injury.  Mayberry testified that Parrish cut her neck several times with a butcher knife while threatening to kill her.  She confirmed that Parrish "broke the skin" with the knife and that "some blood" came from the cuts.  Moreover, both Sergeant Williamson and Plummer testified that they observed the cuts, and the trial court also observed them as they appeared in the photographs introduced at trial.

Accordingly, while the Commonwealth was not *required* to prove that Mayberry suffered an observable cut or wound, based on the record on appeal a rational trier of fact could have concluded that she did.[4]  Likewise, a factfinder could have also concluded based on this record that Mayberry incurred "an act of damage or harm or hurt that relates to the body."  *See Wandemberg*, 70

---

[3] Parrish does not contest that the Commonwealth proved that he acted maliciously and with the intent to maim, disfigure, disable, or kill.

[4] This Court has held that, "to prove the existence of a 'wound,' the Commonwealth must show that the victim's skin was broken or cut."  *Johnson v. Commonwealth*, 58 Va. App. 303, 317 (2011).

Va. App. at 133. Thus, the Commonwealth proved that Parrish unlawfully and maliciously caused Mayberry bodily injury, and the trial court properly denied his motion to strike.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*