COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges O'Brien, Causey and Frucci

TRASHON LAMONT WILLIAMS

v.      Record No. 1262-24-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
OCTOBER 14, 2025

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Christopher R. Papile, Judge

(Joshua A. Goff; Goff Voltin, PLLC, on brief), for appellant.

(Jason S. Miyares, Attorney General; John A. Fisher, Assistant
Attorney General, on brief), for appellee.


After a bench trial, Trashon Lamont Williams was convicted of aggravated malicious wounding, using a firearm to commit a felony, and possessing a firearm as a convicted felon. On appeal, he argues that the evidence was insufficient to support his convictions. We affirm.[1]

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the appeal is wholly without merit." See Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND[2]

On the night of January 2, 2023, Williams was parked in a Kia outside the home of his acquaintance, Z.E.[3] Williams previously had driven Z.E. in that Kia to York County, where they tried to break into cars. He messaged Z.E. to come to his vehicle to smoke marijuana and "chill." After receiving the message, Z.E. met Williams and a third person, A.E., at the Kia. Williams drove them to a dark, isolated parking lot. Z.E., who had a handgun hidden under his clothes, had a "weird feeling" after he exited the car, so he pretended to tie his shoelaces. Williams told him to "stop being scared." As Z.E. stood and approached them, both Williams and A.E. started shooting at him. Z.E. never drew his own firearm. Williams and A.E. shot Z.E. at least four times in the chest and leg. Z.E. fell as he tried to flee.

The police arrived shortly after the shooting, and Z.E. was transported to the hospital. Officers recovered two bullets and six bullet casings in the parking lot. During his transport, Z.E. told officers that A.E. had shot him; he did not mention Williams. Z.E.'s injuries included a fractured leg, punctured lungs, and numbness in three of his fingers. At the time of trial, Z.E. still had numbness in his fingers and faced future surgery to remove a metal rod and the remaining bullets from his leg.

While in the hospital, Z.E. identified Williams and A.E. as the shooters. Investigators found a silver Kia associated with Williams parked on a road with Williams walking nearby. Williams was arrested, and the Kia was impounded.

---

[2] "Consistent with the standard of review when an appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence, "and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329.

[3] We use initials to refer to minors involved in this case.

From jail, Williams made several phone calls about the Kia. In the first call, he asked a woman about the car and after learning it had been impounded, advised her to fight to get the car back. Shortly after that call, Williams called the same woman from a different inmate's account and told her that something was "in the glove compartment." Officers obtained a warrant and searched the Kia. They recovered a black Rhino revolver and bullet cartridges from the glove compartment. Forensic testing confirmed that one of the bullets recovered from the parking lot had been fired from the Rhino revolver. That testing also concluded that the other bullet had been fired from a different gun and that two guns had produced all the recovered shell casings.

Williams was charged with aggravated malicious wounding, using a firearm to commit that felony, and possessing a firearm as a convicted felon. The Commonwealth presented the evidence outlined above, as well as a certified copy of Williams's previous felony conviction. At the close of the Commonwealth's case, Williams moved to strike, arguing that the evidence was insufficient to establish that Z.E. had suffered a permanent, significant physical impairment, as required to support a conviction for aggravated malicious wounding. Williams also argued that Z.E.'s testimony identifying Williams as an assailant was not credible. The court denied the motion.[4]

A.E. testified for the defense and denied knowing Williams. A.E. claimed that he met Z.E. with another individual the night of the shooting. A.E. asserted that Z.E. tried to "snatch" A.E.'s firearm, causing A.E. to shoot him. A.E. alleged that he was the only one who shot Z.E. On cross-examination, A.E. admitted that he had pleaded guilty to conspiracy to commit malicious wounding and that the evidence proffered during his guilty plea hearing was that Williams and A.E. had both shot Z.E.

---

[4] Williams also had been charged with two misdemeanor offenses: brandishing a firearm and reckless handling of a firearm. The court dismissed those charges.

Williams unsuccessfully renewed his motion to strike, and the court convicted Williams of the three offenses. Williams appeals.

## ANALYSIS

### I. Standard of Review

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### II. Z.E.'s Credibility

"[T]he credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." *Fletcher v. Commonwealth*, 72 Va. App. 493, 502 (2020) (quoting *Crawley v. Commonwealth*, 29 Va. App. 372, 375 (1999)). "The trier of fact . . . is free to believe or disbelieve, in whole or in part, the testimony of any witness." *English v. Commonwealth*, 43 Va. App. 370, 371 (2004).

Z.E. testified unequivocally that Williams was one of two assailants who shot him. Z.E. knew Williams and had seen him drive a Kia several times before the shooting. Further, credible circumstantial evidence corroborated Z.E.'s identification of Williams as one of his two assailants. Officers located a Kia associated with Williams, who was nearby when they arrested him. In jail phone calls, Williams expressed concern over what was in the glovebox, after learning the police had impounded the Kia. Officers found one of the two firearms that had been used to shoot Z.E. in the Kia's glovebox.

Acknowledging Z.E. did not initially name Williams as one of the shooters, the court noted that Z.E. had been under severe physical and emotional stress at the time; he had just been shot repeatedly, and medical personnel were cutting the clothes off his body and counting the bullet holes. Given Z.E.'s testimony that A.E. had shot him multiple times, the court found it understandable that Z.E. initially was focused on who he would perceive as the "primary" aggressor.

Further, the court rejected A.E.'s testimony as incredible. A.E. alleged that there was only one shooter that night, which contradicted the physical evidence. The court found A.E.'s explanation of events—that Z.E. had attempted to rob A.E. of a firearm, when he already possessed one—was not as reasonable as Z.E.'s testimony. Lastly, the court noted that A.E. had already stipulated to facts contradicting his account when he pleaded guilty to conspiracy to commit malicious wounding. The court's credibility determination in this case is not plainly wrong, so this Court will not reverse it.

### III. Z.E.'s Injury

"To be convicted of aggravated malicious wounding under Code § 18.2-51.2, the injuries inflicted on the victim must be both a 'significant physical impairment' and 'permanent.'" *Alston v. Commonwealth*, 77 Va. App. 639, 650 (2023) (quoting *Lamm v. Commonwealth*, 55

Va. App. 637, 644 (2010)). "[I]nternal injuries—no less than external injuries—fall within the scope of Code § 18.2-51." *Ricks v. Commonwealth*, 290 Va. 470, 478 (2015) (alteration in original) (quoting *English v. Commonwealth*, 58 Va. App. 711, 719 (2011)). "'"[P]hysical impairment" for purposes of this criminal statute' is defined as 'any physical condition, anatomic loss, or cosmetic disfigurement.'" *Alston*, 77 Va. App. at 650 (alteration in original) (quoting *Lamm*, 55 Va. App. at 644). "To prove an injury is permanent, the Commonwealth need not present definitive testimony that a victim's injuries will never improve, but instead can leave it to the common sense of the [factfinder] to determine if the injuries are permanent." *Id.* (alteration in original) (quoting *Lamm*, 55 Va. App. at 644-45). This Court has "found 'permanent and significant' impairments to include visible scars and scars connected to nerve damage." *Ellis v. Commonwealth*, 70 Va. App. 385, 392 (2019).

The evidence demonstrated that Williams's actions caused Z.E. permanent and significant physical impairment. The shooting punctured Z.E.'s body, lungs, and fractured bones. The injuries required the placement of a metal rod in Z.E.'s leg. At the time of trial, Z.E. still had the metal rod and bullets in his leg, requiring future surgery. Z.E. also suffered nerve damage that caused on-going numbness in three fingers. The court was entitled to rely on its "common sense" to conclude that these injuries were permanent and significant physical impairments. *Alston*, 77 Va. App. at 650; *see also Lamm*, 55 Va. App. at 645 (holding that metal plates in the victim's body and evidence of on-going numbness was sufficient to prove a permanent and significant bodily injury).[5]

---

[5] To the extent that Williams's brief asserts that the evidence was insufficient to prove his intent to commit a malicious wounding, that argument is waived. Rule 5A:18. At trial, Williams only challenged Z.E.'s credibility and the resulting injury; he presented no argument regarding intent. Challenging one element of a criminal offense in the trial court will not preserve an appellate argument regarding a different element of the same offense. *Peters v. Commonwealth*, 72 Va. App. 378, 389-90 (2020). Williams has not invoked the exceptions to Rule 5A:18, and "we do not consider them *sua sponte*." *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023).

CONCLUSION

For these reasons, we affirm the court's judgment.

*Affirmed.*